(75 N. W. Rep. 781.)

---

## CHARLES H. SMITH vs. MALVINA W. SMITH.

Opinion filed April 29th, 1898.

**Divorce—Jurisdiction—Domicile—Evidence.**

It appears that plaintiff was born in the State of New York, and that his relatives live there, and that plaintiff resided there until he came to Jamestown, N. D., about October 1, 1895. Plaintiff remained at Jamestown, at an hotel, for seven days, and no longer, and then he departed from the state, and went to the City of Washington, and was employed there continuously until July 30, 1896, at which date he came into the state to attend the trial of this action and for no other purpose, and after its trial returned to Washington to resume his work in that city. During his visit to the state in October, 1895, plaintiff did not engage in any business or calling, or seek to do so, but while here consulted with an attorney with reference to commencing an action for a divorce, which action was commenced in March, 1896. Before leaving New York plaintiff informed a relative that he was coming to this state to obtain a divorce, and as a witness stated at the trial that one object he had in view in coming to this state was to obtain a divorce from the defendant. He also stated that he had other objects in view, but, on being pressed to do so on cross-examination, plaintiff failed to state any other reason or motive for coming into the state. Plaintiff testified that he was a resident of the state in good faith, and had been since October 1, 1895. The trial court entered judgment granting the plaintiff a total divorce. *Held*, that the judgment must be reversed, and the action dismissed, on the ground that the trial court failed to obtain jurisdiction of the subject of the action, for the reason that the evidence showed that the plaintiff

never acquired a residence, *i. e.* a domicile, in this state at any time prior to bringing the action.

## Residence and Domicile the Same.

*Held,* further, that under § 2755, Revised Codes, the word "residence" must be construed to mean the same as the word "domicile."

## Good Faith Residence Required.

*Held,* further, that it is the duty of trial courts to scrutinize with great care the evidence of domicile of parties coming into this state from other states who commence actions for divorce as soon as the time limit expires, and especially so where such parties ask a divorce upon grounds which are unavailable to them under the laws of the state from whence they came. No court has a right to grant a divorce to a mere transient comer, who enters the state with no honest purpose of establishing a domicile in the state, and who cherishes the purpose of quitting the state as soon as the divorce case is decided.

Appeal from District Court, Stutsman County; *Rose,* J.

Action by Charles H. Smith againt Malvina W. Smith for a divorce. From a decree granting plaintiff an absolute divorce, defendant appeals.

Reversed.

*S. E. Ellsworth,* for appellant.

Respondent came from New York where he had been a resident all his life and unless a change is shown by clear and positive proof he will be presumed a resident of New York. *Mitchell* v. *United States,* 21 Wall. 350. The only evidence of his intention to make this state his home is his own uncorroborated statement, unaccompanied by proof of any act indicating such intention. Such declarations are entitled to little weight. *Gourlay* v. *Gourlay,* 10 At. Rep. 592; *Pickering* v. *City,* 144 Mass. 244, 10 N. E. Rep, 827. Acts are stronger than words in proof of residence. *Firth* v. *Firth,* 24 At. Rep. 916. Plaintiffs evidence in divorce cases should not alone be relied on to prove residence. *McShane* v. *McShane,* 19 At. Rep. 465. The statute requires an actual residence of 90 days as a jurisdictional prerequisite in divorce matters. Section 2755, Rev. Codes; *Beach* v. *Beach,* 46 Pac. Rep. 528. A temporary sojourn for divorce purposes, without fixed abode and permanent business connection is not residence. *Gardner* v. *Board,* 5 Dak 259–264; *Bennett* v. *Bennett,* 28 Cal. 600;

*Hall* v. *Hall*, 25 Wis. 600; *Way* v. *Way*, 64 Ill. 413. A change of residence actuated by the declared intention of procuring a divorce within the jurisdiction removed to is regarded with suspicion, and the evidence relating to such change will be subjected to the closest scrutiny. *Winship* v. *Winship*, 16 N. J. Eq. 107; *Beach* v. *Beach*, 46 Pac. Rep. 528; *Smith* v. *Smith*, 4 Green, (Ia.) 226; *Whitcomb* v. *Whitcomb*, 46 Ia. 437; *Dutcher* v. *Dutcher*, 39 Wis. 651; *Reed* v. *Reed*, 51 Mich. 117; *Sewall* v. *Sewell*, 122 Mass. 156; *Smith* v. *Smith*, 13 Gray, 209; *Com.* v. *Kendall*, 38 N. E. Rep. 504; *Hall* v. *Hall*, 25 Wis. 600; *Dunham* v. *Dunham*, 44 N. E. Rep. 841; *Dickinson* v. *Dickinson*, 45 N. E. Rep. 1091; *Munson* v. *Munson*, 14 N. Y. Supp. 692; *Chapman* v. *Chapman*, 21 N. E. Rep. 806. A former adjudication of the issues in this case by the courts of the District of Columbia is plead in bar. In that action by Mrs. Smith against respondent permanent alimony was awarded her, and every material point presented in this case was there decided adversely to respondent. Such decree must stand until reversed by a proper proceeding and is a bar to this. *Tadlock* v. *Eccles*, 73 Am. Dec. 213; *Slater* v. *Skirving*, 70 N. W. Rep. 493; *Kilheffer* v. *Heir*, 17 Am. Dec. 658. *Fischel* v. *Fischel*, 12 Am. Dec. 257; *Smith* v. *Smith*, 37 At. Rep. 49. While the parties lived apart by agreement, no charge of desertion can be sustained. *Franklin* v. *Franklin*, 28 N. E. Rep. 581.

. *Fredrus Baldwin*, for respondent.

The motive which prompted respondent to change his residence to this state is immaterial if he has a permanent home here. *Robertson* v. *Cease*, 97 U. S. 646; *Shelton* v. *Tiffen*, 6 How. 163. The fact that the liberal divorce laws led to his residence here, does not preclude him from the rights of an inhabitant of the state. *Fasdick* v. *Fasdick*, 15 R. I. 130, 23 At. Rep. 140; *Colburn* v. *Colburn*, 70 Mich. 647; *Alber* v. *Alber*, 141 Ill. 550, 31 N. E. Rep. 153, The words actual resident as used in the divorce statute means residence with the same attributes as are intended when the word domicile is used. *Carpenter* v. *Carpenter*, 30 Kan. 715, 2 Pac.

Rep. 122. The law of the place of the actual bona fide domicile of the parties gives jurisdiction to decree a divorce for any cause allowed by local law. Story Confl. L. 230; Whart. Confl. L. 856; 2 Bish. M. D. & S. 141. The trial court found that defendant was guilty of extreme cruelty. Grevious mental suffering inflicted upon another is extreme cruelty within the meaning of the statute. *Carpenter* v. *Carpenter*, 30 Kan. 712, 2 Pac. Rep. 122; *Whitmore* v. *Whitmore*, 49 Mich. 417; *Avery* v. *Avery*, 33 Kan. 1; *Barnes* v. *Barnes*, 30 Pac. Rep. 298; *Fleming* v. *Fleming*, 30 Pac. Rep. 566. Plaintiff need not prove injury to the health to obtain a divorce because of mental suffering. *Robinson* v. *Robinson*, (N. H.) 49 Am. St. Rep. 632; *Poor* v. *Poor*, 29 Am. Dec. 674; *Morris* v. *Morris*, 73 Am. Dec. 619; Myers Appeal, 12 Am. St. Rep. 877; *Sharp* v. *Sharp*, 6 N. W. Rep. 15; *Kelley* v. *Kelly*, 1 Pac. Rep. 194; *Cole* v. *Cole*, 23 Ia. 433. A judgment is conclusive as an estoppel only as to facts without the existence and proof or admission of which it could not have been rendered. *Leonard* v. *Whitney*, 109 Mass. 265; *Palmer* v. *Hussy*, 87 N. Y. 303; *Burlen* v. *Shannon*, 14 Gray, 433; *McIntyre* v. *Story*, 80 Ill. 127.

WALLIN, J. This action was brought to obtain a divorce from the bonds of matrimony. In the court below the plaintiff prevailed, and obtained a judgment decreeing a total divorce between the parties on the grounds of the defendant's cruelty and desertion. The record transmitted to this court embraces all the evidence, and the case is now before the court for trial anew on the merits, under section 5630, Rev. Codes.

In the view which we have taken of the questions presented by the record, it becomes unnecessary, if not improper, in disposing of the case, to do more than to discuss a single feature thereof, viz. that which bears upon plaintiff's domicile in the state, as affecting the jurisdiction of the trial court over the subject matter of the action. We are convinced, after a careful review of the evidence,—all of which upon this point came from the plaintiff's side of the case,—that the plaintiff was not domiciled in this state any time prior to the commencement of this action

or before its trial. The complaint alleges that the plaintiff now is and has been for more than 90 days last past an actual resident and inhabitant of this state, and that the defendant resides in New York state, at or near Worcester, in Otsego County. The answer, after admitting that the defendant is a resident of the State of New York, denies that the plaintiff ever resided in this state, and alleges that he is now, and for more than 20 years has been, an inhabitant and resident of the State of New York. The action was commenced on March 25, 1896, and was tried August 4, 1896. Among other findings of fact the court below found as follows: "That plaintiff and defendant, on the 7th day of December, 1863, in Otsego County, State of New York, intermarried; that plaintiff is a clerk by occupation, and since March 21, 1871, has been employed in the treasury department of the United States; that at the time of such appointment he was living in East Worcester, Otsego County, State of New York, and has been, since 1865, at his residence thereat with his wife, this defendant, and that the plaintiff ever since his appointment as clerk, as aforesaid, voted at East Worcester, Otsego County, New York, down to the year 1895, and claimed that East Worcester, New York, was his home; that his official duties were to be performed and were performed at Washington, D. C., and at the United States treasury department, and that he was in the civil service of the United States; that he was compelled to spend his time at said City of Washington, D. C., during all his time, except one month each year which he was allowed for absence, and that during all these years, except when at East Worcester, Otsego County, N. Y., he boarded, lodged, and had his washing done at Washington, D. C.; that in October, 1895, or about that time, he left the City of Washington, and went to Worcester, Otsego County, N. Y., and from there about October 1, 1895, came to Jamestown, N. D., for the purpose of making North Dakota his home, in good faith, and that about October 5, 1895, reached Jamestown, Stutsman County, N. D., and established a domicile thereat, and since that time has had no other

residence or domicile; that after establishing his domicile thereat, and after a few days, he returned to the treasury department, at Washington, D. C., aforesaid, and did not return again to Jamestown, N. D., until about July 30, 1896."

The defendant controverts the finding which declares, in effect, that the plaintiff in good faith established his residence and domicile in North Dakota about October 1, 1895, and since that time has had no other residence or domicile, and by a proper exception raises the question in this court as to the sufficiency of the evidence to sustain such finding. The testimony bearing upon this question is not voluminous and is undisputed. It appears that the plaintiff was very seriously wounded at the battle of Gettysburg, and that by reason thereof, through the intervention of friends, a position was secured for him, in 1871, in the treasury department at Washington, and that he has held that position continuously ever since his appointment. Each year the plaintiff is granted a leave of absence for the period of 30 days, and no longer, and during which it has been his habit to spend his time in Otsego County, N. Y., and plaintiff has voted there up to the time when he claims to have changed his residence from New York to North Dakota. Plaintiff's relatives live in New York, and there he was born and lived and owned a residence after his marriage. None of his kindred are shown to have ever lived in this state. He left Washington about October 1, 1895, and visited relatives in Otsego County for a day or two, and then informed his relatives that he was coming to North Dakota to "procure a divorce," and also said "he was going to Jamestown, N. D., to take up his residence." Plaintiff arrived in Jamestown, N. D., in the early part of October, 1895, and remained there about seven days, stopping at an hotel. He then left for Washington, and remained in that city in his said employment continuously until July 30, 1896, on which date he reached Jamestown, N. D., and came there to attend on the trial of this action, and for no other purpose. His counsel admits on the argument in this court that plaintiff returned to his work in

Washington at once after the trial of his case was completed. During his seven days' sojourn at Jamestown, in October, 1895, the plaintiff engaged in no business occupation whatever, and did not enter into any negotiations there with a view to entering into any particular business or occupation in North Dakota. He brought with him no effects other than the usual baggage of a transient traveler, and, so far as appears, neither purchased nor rented property anywhere in the state. He was not called into the state on any business errand, nor did he come here to engage in any business, calling, or occupation whatever. He testified that one of his objects in coming to North Dakota was to obtain a divorce, and, when pressed to do so, gave no other specific object or motive as an inducemant operating to bring him within the state. He admitted that one object he had in coming to this state was to establish a residence in order to apply for a divorce, but stated that such object was not the only consideration in his mind; yet, being urged to mention any other motive, failed to do so otherwise than to say, in general terms, that he was prospecting, looking around, etc. In answer to a direct question put by his counsel, the plaintiff stated, as a witness, in substance, that he was a resident in good faith of Jamestown, N. D., and that he became a resident there about the 1st of October, 1895. If this testimony is true, the plaintiff was in a position to institute his action in March, 1896, when it was commenced. The court below has found that the plaintiff was a resident and was domiciled in the state in good faith from and after October 1, 1895. After carefully weighing this evidence, this court has been unable to reach the same conclusion, but has, on the contrary, reached the opposite conclusion. The evidence, viewed as a whole and considered in the light thrown upon it by the surrounding circumstances of the case, irresistibly leads us to conclude that the plaintiff came into this state in October, 1895, for a temporary purpose only, *i. e.* of obtaining a nominal and technical status as a resident, with a view to instituting an action for a divorce, and for no other purpose whatever. We think this purpose stands

out clearly and unmistakably. The only business which the plaintiff transacted during the few days in which he was in the state was to consult with his attorney, with whom he had previously corresponded, with reference to the commencement of an action for divorce, which action was subsequently commenced. It is apparent that the nature of plaintiff's business was such that it required his personal attention at Washington, and, in the entire absence of any evidence showing a purpose or expectation on plaintiff's part of quitting his employment at Washington to take up another business in this state, we are, as we think, warranted in the conclusion that plaintiff did not intend at any time to do so. Had he cherished any such purpose, he would certainly have revealed it in his testimony, when pressed by counsel to do so. under the circumstances of this case.

The record is replete with evidence that the conjugal infelicities of the plaintiff and defendant were of many years' standing, and had been attended with peculiarly exasperating incidents and much mortifying publicity. Suits of both a civil and criminal nature had been prosecuted by the defendant against the plaintiff prior to the commencement of this action, and these attacks upon the plaintiff by the defendant had, as the evidence shows, engendered in the mind of the plaintiff a deep resentment against the defendant, culminating in an inflexible purpose to obtain a legal separation from her if possible. In paying his brief visit to this state in October, 1895, we can discover in the record no trace of any object whatever other than that of availing himself of our liberal laws upon divorce. The plaintiff's grounds of divorce—cruelty and desertion—constitute no grounds in the State of New York for a total divorce from the bonds of matrimony. Under our more liberal laws, these grounds are sufficient, and the plaintiff himself testifies that one motive for coming here was that he might obtain a divorce by coming. We think further comment upon the evidence is unnecessary, and shall only add that we realize the fact that the plaintiff was under constraint by reason of the fact that his occupation required him to remain

constantly out of the state, and at Washington, D. C., except for the brief period of 30 days in each year in which he had leave of absence. This may be plaintiff's misfortune, but it cannot alter the fact that, upon this issue, the plaintiff is bound to show to the satisfaction of the court, by competent evidence, that he was domiciled in the state for a period of 90 days before his action was commenced. In this the plaintiff has, in our opinion, signally failed and come short. We are convinced, from all the circumstances of the case, that the plaintiff at all times cherished the purpose to leave the state, and not reside therein, after he had secured his divorce. We do not wish to be understood that the fact that the plaintiff came to the state with a view of obtaining a divorce should militate against the bona fides of his domicile; provided, always, that he in good faith intended to reside here, and did not, while prosecuting the action for a divorce, harbor a purpose of quitting the state as soon as that object was attained.

The motive of taking up a residence is usually immaterial, except so far as it may throw light upon the bona fides of the domicile. *Fosdick* v. *Fosdick*, (R. I.) 23 Atl. 140; *Colburn* v. *Colburn*, 70 Mich. 647, 38 N. W. Rep. 607. The statute (Revised Codes, section 2755) declares: "A divorce must not be granted unless the plaintiff has in good faith been a resident of the state ninety days next preceding the commencement of the action." In our opinion, this language implies something more than the mere inhabiting or mere residence in the state by the plaintiff for the prescribed period. Residence in good faith includes the attributes of domicile. *Carpenter* v. *Carpenter*, 30 Kan. 712, 2 Pac. Rep. 122. For the purposes of a divorce, no matter how long a residence in a particular place may be, it does not confer domicile unless there be an intention to remain in such place permanently. See Whart. Confl. Laws, § 223. The test is domicile, and it is a right test, since it assumes, not merely residence, but an intention to remain permanently in the territory of the state asserting jurisdiction. "There must be a real domicile; that is to say, the domicile must be adopted as a permanency."

*Id.* In divorce law, the word "residence" in statutes giving jurisdiction is interpreted to mean the same thing as "domicile." 2 Bish. Mar. & Div. § 111. In fact, a divorce granted to a mere inhabitant or mere resident, not domiciled in the state granting the divorce, would be a purely local affair, and without binding force in other jurisdictions. *Id.* section 10. As to what constitutes domicile as distinguished from residence, see Nels. Div. sections 40, 41. The statute requiring residence, which means domicile, for a period of 90 days, as preliminary to starting an action for a divorce, is jurisdictional to the subject matter. Until this preliminary proof is made, the trial court obtains no authority to move in the action. Until this prerequisite is met, no lawful service of a summons can be made. The court itself is in duty bound to see that its own jurisdiction exists, and for that purpose it should scrutinize the proof offered on this question with painstaking fidelity. In a divorce case the sovereign state is always present as a party in the action, not technically, but actually and potentially, a party. The state represented by the court is there to see to it that no mere transient inhabitant, whose domicile is elsewhere, shall call upon the courts of the state to adjudicate upon the marital relations of citizens of other states or nations. To do so would not only be without results, except as a purely local affair, but would be a gross violation of the comity of states, and one directly calculated to lead to much social and domestic discord and unhappiness to the innocent parties directly concerned in the action. The proof of jurisdictional facts should be clear and convincing. In the case at bar it falls far short of this. The court below, not having acquired jurisdiction of the subject-matter, was without authority to enter judgment. For this reason the judgment must be reversed and the action dismissed. It will be so ordered. All the judges concurring.