Melnick *v.* Melnick et al., Appellants.

Argued October 29, 1943.   Before KELLER, P. J.,

Baldrige, Stadtfeld, Rhodes, Hirt and Kenworthey, JJ. (Reno, J., absent).

*Marshall A. Coyne,* with him *Gustave F. Straub* and *David J. Smyth,* for appellants.

*W. Bradley Ward,* with him *Lemuel B. Schofield,* for appellee.

Opinion by Keller, P. J., March 7, 1944:

This is an appeal from a declaratory judgment fixing the marital status, within this Commonwealth, of the petitioner, or plaintiff, and the woman respondent, or defendant. A preliminary question raised in the same proceedings came before us in 147 Pa. Superior Ct. 564, 25 A. 2d 111, in which we decided that, since the Act of April 25, 1935, P. L. 72, amending the Declaratory Judgment Act of June 18, 1923, P. L. 840, where one party asserts that a marital relation or status exists between him and an adversary party, who denies such asserted relation or status, he may seek and obtain a declaratory judgment with respect to the matter in controversy, where such judgment will settle the dispute as to the existence of that legal relation or status within this Commonwealth, even though it will not satisfy both parties or restore marital harmony; that

the *concrete* interest of the respective parties in such asserted marital status or relation, required by the Act of 1935, supra, does not have to be a financial or property interest; and that, in the circumstances here presented the petitioner was not·guilty of laches such as to deprive him of that right. Hence we reversed an order of the court below sustaining preliminary objections to the petition for a declaratory judgment, and remanded the record, with leave to the defendants to file an answer to the averments of fact in the petition, and for further proceedings as prescribed by the supplemental Act of May 22, 1935, P. L. 228.

We shall not unduly lengthen this opinion by again reciting the facts or re-discussing the law covered in the former opinion. Reference will be had to it. However, we feel impelled to say that we did not, as argued by the appellant, hold that proceedings looking to a declaratory judgment are to be decided according to equitable rules and principles. Judgments establishing a legal relation or legal status are legal, not equitable. In our discussion, under the point that no other statute or proceeding in Pennsylvania provides a special form of remedy for the specific type of case here presented, during the lives of the parties, (pp. 572-3), after showing that proceedings for a *declaratory judgment* fixing marital status had been upheld in New York and Connecticut, we went on to say that in New Jersey, where the Court of Chancery has *general* jurisdiction, as opposed to the *limited* jurisdiction in equity conferred on our courts by the Act of June 16, 1836, P. L. 784, sec. 13, it has been held that the Court of Chancery may entertain a bill for the primary purpose of declaring a decree of divorce fraudulently procured in another state to be without force or effect in New Jersey; but that no such power had been conferred on our courts by the Act of 1836 or its supplements. We did not mean to hold that a legal relation or status can be gained or

lost by the application of equitable principles; although the trial, if by the court without a jury, is to be in accordance with the practice for trials in equity cases. (Act of May 22, 1935, P. L. 228, supra, p. 229).

On the return of the record to the lower court, the defendants filed an answer on the merits, and a trial was had before the court, without a jury, a trial by jury having been dispensed with by agreement, which resulted in findings of fact, conclusions of law, and an adjudication by the court, on October 6, 1942, in the plaintiff's favor, declaring that the divorce obtained by defendant, Helen B. Melnick, in Reno, Nevada, on July 20, 1931, was null and void and without force and effect in Pennsylvania, and that the Reno divorce decree did not dissolve the marriage relation between the plaintiff and said defendant, Helen B. Melnick, and that they are now husband and wife, and that the purported marriage between the defendants, Helen B. Melnick and Samuel B. Rosenbaum in the City of Reno on July 20, 1931 is null and void and without force and effect in Pennsylvania; and entered a declaratory judgment in accordance with said findings and adjudication.

Defendants' exceptions to the court's findings of fact, conclusions of law, adjudication and declaratory judgment were dismissed by the court in an opinion filed December 2, 1942. On December 14, 1942 defendants appealed to this court.

On December 21, 1942, the Supreme Court of the United States handed down its opinion in *Williams et al. v. North Carolina,* 317 U. S. 287, which overruled *Haddock v. Haddock,* 201 U. S. 562, (1906), and held that, assuming that the petitioners (Williams and Hendrix) each had a bona fide domicile in Nevada, as had been, in effect, tacitly accepted by the Supreme Court of North Carolina, their respective decrees of divorce obtained in Nevada were valid and legal, and entitled

to full faith and credit in North Carolina in prosecutions for adultery brought in that state, even though personal service had not been made on their respective spouses and the latter had not been domiciled in Nevada nor appeared in person or by attorney to the respective divorce actions in that state. On December 29, 1942, these appellants filed a petition asking us to remand the record to the court below for the purpose of re-argument, in order to give that court an opportunity to reconsider its adjudication in the light of the *Williams* case. And the trial judge wrote us a letter, which we considered in the nature of a petition, joining in the request and stating that his adjudication was made largely on the authority of *Haddock v. Haddock*. We granted a rule and heard oral argument, and on May 3, 1943 entered an order remanding the record to the court below, because of the expressed request of that court; stating that "in doing so we are not to be understood to pass upon or give any indication of our view regarding the applicability of the Williams case to the facts of the present case."

After re-argument was had in the court below, it filed on July 29, 1943, a supplementary adjudication, in which it reached the same findings and conclusions as in its original adjudication of October 6, 1942, and the declaratory judgment previously entered was declared to be the judgment of the court.

Following the trial held on June 2, 1942, the trial court made, inter alia, the following findings of fact and conclusions of law:

### FINDINGS OF FACT

"1. Plaintiff, Samuel Melnick, is a citizen of the State of Pennsylvania, residing in the City and County of Philadelphia.

"2. Plaintiff has been a citizen and resident of the State of Pennsylvania throughout his life, having been born in the City of Philadelphia.

"3. Defendant, Helen B. Melnick, now resides, and has since August 1931, resided in the City of New Haven, State of Connecticut.

"4. For more than fifteen years preceding August 1931 defendant, Helen B. Melnick, was a citizen of the State of Pennsylvania, and a resident of the City of Philadelphia.

"5. Plaintiff, Samuel Melnick, was married to the defendant, Helen B. Melnick, on June 7, 1923, in the City of Philadelphia, State of Pennsylvania.

"6. From June 7, 1923 until February of 1929, and in May of 1929 plaintiff and defendant, Helen B. Melnick, were continuously domiciled, lived together as husband and wife, and maintained their home in the City of Philadelphia, State of Pennsylvania.

"7. From May 11, 1929 until April 16, 1931, defendant, Helen B. Melnick, continued to live and remain at 4601 Spruce Street, Philadelphia, separate and apart from the plaintiff, her husband.

"8. From May 11, 1929 until the present time the defendant, Helen B. Melnick, has refused to resume marital relations or a common habitation with the plaintiff.

"9. From May 11, 1929 until the present time the plaintiff has continuously maintained his home and domicile in the City of Philadelphia, State of Pennsylvania.

"10. On April 16, 1931, the defendant, Helen B. Melnick, arrived in the City of Reno, County of Washoe, State of Nevada.

"11. The purpose of defendant's, Helen B. Melnick's presence in Reno, Nevada, on April 16, 1931, was to obtain a divorce from the plaintiff, with no bona fide intention of establishing a permanent residence there, and therefore, she was not a domiciled resident of Nevada.

"12. Precisely six weeks after her arrival in Reno, Nevada, which period of time is a preliminary require-

ment for residence in Nevada for the procuring of a divorce, defendant, Helen B. Melnick, on May 29, 1931, filed an application for divorce from the plaintiff, Samuel Melnick, in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, Department No. 1, No. 35058, on the ground of extreme cruelty.

"13. Plaintiff, Samuel Melnick, and the defendant, Helen B. Melnick, his wife, never lived together in the State of Nevada.

"14. The alleged cause of action or alleged grounds for divorce, which were the basis for the aforesaid Nevada proceedings, arose in the State of Pennsylvania and not in Nevada.

"15. Plaintiff, Samuel Melnick, never resided in the State of Nevada.

"16. On June 2, 1931, a summons issuing out of the Reno, Nevada, court was served upon plaintiff in the City of Philadelphia, State of Pennsylvania.

"17. Plaintiff was never personally or otherwise served within the State of Nevada with the summons or other process in divorce issued in the proceedings in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, in which the decree of divorce of the defendant, Helen B. Melnick, from the plaintiff, Samuel Melnick, was obtained on July 20, 1931.

"18. Plaintiff, Samuel Melnick, did not appear in the divorce proceedings aforesaid either in person or by attorney, and never authorized any person or attorney to appear for him therein.

"19. Pursuant to the aforementioned application filed by the defendant, Helen B. Melnick, an absolute decree in divorce was granted on July 20, 1931, by the Second Judicial District Court of the State of Nevada, in and for the County of Washoe.

"20. Immediately following the granting of said de-

cree of divorce of defendant, Helen B. Melnick, from the plaintiff herein, Samuel Melnick, said Helen B. Melnick entered into a marriage with the second defendant named herein, Samuel B. Rosenbaum, on the same day the decree in divorce was granted, to wit, July 20, 1931, which marriage occurred in the City of Reno, County of Washoe, State of Nevada, and was performed by the judge who granted the said decree in divorce.

"21. Immediately following the aforesaid marriage by and between the defendants herein, the said defendants left the State of Nevada on July 20, 1931, and went to California for a period of about six weeks, and thereafter took up their permanent residence in the City of New Haven, State of Connecticut.

"22. Since July 20, 1931, the defendants have lived and cohabited as husband and wife in the City of New Haven, State of Connecticut.

"23. The home and domicile of the plaintiff, the home and domicile of the defendant, Helen B. Melnick, and the home and marital domicile of plaintiff and defendant, Helen B. Melnick, always was and had been continuously maintained in the City of Philadelphia, State of Pennsylvania, prior to July 20, 1931, the date of the granting of the decree in divorce aforementioned.

"24. Plaintiff has at no time recognized or acquiesced in the aforementioned Nevada decree of divorce, nor in the defendants holding themselves out as husband and wife ......

### Conclusions of Law

"1. No marital relation ever existed between plaintiff Samuel Melnick, and the defendant, Helen B. Melnick, his wife, in the State of Nevada; the home and marital domicile of plaintiff and his wife, Helen B. Melnick, was and always had been maintained in the State of Pennsylvania.

"2. The service of the summons in divorce in the pro-

ceedings aforesaid, issuing out of the said Nevada court, having been made upon the plaintiff in Pennsylvania, was a nullity, and did not give said Nevada court jurisdiction in the aforementioned divorce proceedings.

"3. The Nevada court which granted the decree of divorce aforementioned had no jurisdiction of the subject matter of the suit in which said decree was entered, or of the marital res existing between plaintiff and defendant, Helen B. Melnick, his wife, or of the person of plaintiff, Samuel Melnick, who was the defendant in said divorce action.

"4. The said divorce decree entered by the Nevada court was and is, therefore, null and void, of no effect as a decree in divorce within the State of Pennsylvania and was not and is not such a judgment of a sister state as to be entitled to recognition in the State of Pennsylvania.

"5. The proceedings in divorce in Nevada aforesaid are not in rem and did not justify the Nevada court in entering a decree as to the res or marriage relation between plaintiff and defendant, Helen B. Melnick.

"6. The defendant, Helen B. Melnick, did not take with her to Nevada the marital relationship between her and plaintiff, or their matrimonial domicile, and the proceedings in the Nevada court could not be in rem.

"7. Under the facts in this case a condition has arisen and exists which necessarily creates doubt, uncertainty, confusion and insecurity as to plaintiff's legal, social and marital status.

"8. An actual controversy and antagonistic claims exist between plaintiff and the defendants.

"9. Plaintiff, having shown that he was married to defendant, Helen B. Melnick, and asserted the existence of that marital relation or status as against the Nevada divorce decree, without legal service upon him, or his presence in said state, or appearance, or representation in said divorce proceeding, has a concrete interest in the

affirming of the maintenance of that legal relation or status; and there is a challenge and denial of such relation or status by the defendants who, asserting its dissolution by the Nevada decree of divorce, have a concrete interest in denying the maintenance and existence of that relation or status.

"10. Plaintiff need not have a financial or property interest to entitle him to a declaratory judgment of his marital relation or status.

"11. Said declaratory judgment does not have to satisfy the parties hereto, or restore marital harmony, or settle all issues between them.

"12. A declaratory judgment and decree in this proceeding will settle the disputed marital status between plaintiff and defendant, Helen B. Melnick, and thus terminate the present controversy and the uncertainty as to the antagonistic claims of the parties and their legal relation, status and rights.

"13. There is no other remedy or proceeding open to the plaintiff in this Commonwealth in which the legal status of the parties hereto can be settled and determined during their lifetime.

"14. Plaintiff need not bring an action of divorce against his wife, Helen B. Melnick, defendant.

"15. No divorce or annulment of marriage is sought in these proceedings.

"16. The plaintiff in this case has made out and proved a good cause of action of which the court has jurisdiction and which entitles him to a judgment under the Declaratory Judgments Act establishing the continued existence of his marital relation or status.

"17. Plaintiff has at no time recognized or acquiesced in the aforementioned Nevada decree of divorce, nor in the defendants holding themselves out as husband and wife, but, on the contrary, has always held himself out and considered himself as still married and not as a single man, and has disputed and challenged, ......,

and does now dispute and challenge the legality thereof.

"18. Plaintiff is entitled to the decree prayed for in his petition.

"19. The plaintiff is not guilty of laches.

"20. Defendants should pay the costs."

The findings of fact made by the court below are sustained by the evidence. In fact, most of them were expressly admitted by the defendants in their answer. Where the averments in the plaintiff's petition or pleadings are unqualifiedly admitted in the corresponding paragraphs of the defendants' answer, the plaintiff may offer in evidence the paragraph of the petition and the admission in the corresponding paragraph of the answer, without including in his offer other matters appearing in that paragraph by way of avoidance or defense: *Shobert v. Brookville B. & T. Co.*, 132 Pa. Superior Ct. 365, 371, 200 A. 942; *Goldstein v. Goldstein, No. 1*, 152 Pa. Superior Ct. 566, 569, 33 A. 2d 82. It is only where the admission is qualified or conditioned that it cannot be separated from the qualification or condition; *Buehler v. U. S. Fashion Plate Co.*, 269 Pa. 428, 434, 112 A. 632; *Maryland Casualty Co. v. Specht*, 83 Pa. Superior Ct. 429, 431. Other averments in the petition were insufficiently denied in the answer and therefore to be taken as admitted facts: *Buehler v. U. S. Fashion Plate Co.*, supra, pp. 433, 434.

As an example of an averment in the petition, insufficiently denied and therefore taken as admitted, we refer to paragraph 12 of the petition: "The purpose of said defendant's presence in Reno, Nevada, at the aforesaid time (April 16, 1931) was to obtain a divorce from the plaintiff". Helen's answer to this averment was "12. Several years prior to April 16th, 1931, respondent had for good and valid reasons, and for causes recognized by the Commonwealth of Pennsylvania, contemplated the bringing of a suit in divorce. In April of 1931, the respondent left the City of Philadelphia in-

tending to abandon her domicile in Philadelphia and to establish her domicile elsewhere, never intending to return to the City of Philadelphia."

In the light of her other admissions in the answer it is clear that when the respondent left Philadelphia in April 1931 and went to Reno, Nevada, she went there solely for the purpose of getting a divorce from the plaintiff, intending to marry Rosenbaum, and then establish her domicile with him, at his domicile in New Haven; and she never had any intention of establishing her *domicile* in Reno. Nowhere in her answer did she aver that her purpose in going to Reno, Nevada, was to establish a domicile there with the intention of residing there permanently. The court was accordingly warranted, by her evasive and insufficient answer to the plaintiff's twelfth averment, in making its eleventh finding of fact: "The purpose of defendant's, Helen B. Melnick's presence in Reno, Nevada, on April 16, 1931, was to obtain a divorce from the plaintiff, with no bona fide intention of establishing a permanent residence there, and therefore she was not a domiciled resident of Nevada."

Assuming that we were right in our disposition of the preliminary proceeding (147 Pa. Superior Ct. 564, 25 A. 2d 111), then the findings of fact of the trial court support the conclusions of law and the judgment entered by the court below, which are in accord with the decision of our Supreme Court in *Com. ex rel. Esenwein v. Esenwein,* 348 Pa. 455, 35 A. 2d 335, (affirming 153 Pa. Superior Ct. 69, 33 A. 2d 675). That case rules that the full faith and credit clause of the Federal Constitution does not require the courts of this state to accept a decree of divorce entered in Nevada in favor of a libellant, who was not domiciled in that state, against a respondent who was likewise not domiciled there, nor served with process there, and who did not appear in the action; that in determining the extraterritorial

effect of a decree of divorce of a sister state, the courts of this Commonwealth have power to inquire into the jurisdictional facts necessary to confer jurisdiction on the court which entered the decree, including the bona fides of the libellant's domicile in that state; and that the intention required for the acquisition of domicile of choice is an intention to make a home in fact; and that where the Pennsylvania court has found, on sufficient competent evidence, that although the six-weeks *residence* required by the Nevada statute may have been established, libellant's intention to leave that state immediately afterward prevented a finding that his residence or domicile was in good faith, the ruling of the Supreme Court of the United States in *Williams et al. v. North Carolina,* did not apply and the decree of divorce obtained in Nevada was null and void as respects the courts of this Commonwealth. To the same effect see *Com. ex rel. Phelps v. Phelps,* 154 Pa. Superior Ct. 270, 35 A. 2d 530; *Grossman's Estate (No. 1),* 263 Pa. 139, 106 A. 86.

These decisions are likewise in accord with the following decisions of the Supreme Court of the United States, which were not overruled with *Haddock v. Haddock,* supra, in the majority opinion in *Williams et al. v. North Carolina,* supra, and remain of binding authority, viz., *Bell v. Bell,* 181 U. S. 175; *Streitwolf v. Streitwolf,* 181 U. S. 179; *Andrews v. Andrews,* 188 U. S. 14, 30-35.

Furthermore, the learned judge of the court below in his opinion of July 29, 1943, pointed out that the finding in the Nevada decree as to libellant's residence, offered in evidence in this case, was materially different from the findings in the Williams and Hendrix divorce cases. Here the finding was, "The plaintiff was sworn and testified in her own behalf, and her residence for the time required by law was proven to the satisfaction of the court". In the Williams and Hendrix cases the find-

ing in each case was: "The plaintiff has been and now is a *bona fide* and continuous resident of the County of Clark, State of Nevada and had been such resident for more than six weeks immediately preceding the commencement of this action in the manner prescribed by law" (317 U. S. at p. 290). The Supreme Court of Nevada held in *Latterner v. Latterner,* 51 Nev. 285, 274 P. 194, that the 'residence' required by the act meant the physical presence of the person as well as his or her *intent* to *make the place a home;* and that the lower court was without jurisdiction to grant the plaintiff a decree of divorce unless it found him to be "a bona fide resident". Residence, within the Nevada Act, is a settled or fixed abode, indicating permanency, or at least an intention to remain for an indefinite time—made up of the physical fact of abode and the intent of remaining: *Presson v. Presson,* 38 Nev. 203, 147 P. 1081.

We are of opinion that the litigation between Melnick, on the one hand, and his wife and her father, on the other, and the settlement of that litigation, and the treatment accorded each spouse by the other for several years prior to their separation are not material in this proceeding. This plaintiff may not be an admirable citizen, and his relations with his wife may not have been praiseworthy, but if they had been such as to entitle her to a divorce, she would have got it in this state. This is not the proceeding to try the marital failings of either or both. The Declaratory Judgment Act specifically provides that it shall not be permitted in any case where a divorce or annulment of marriage is sought—that is, a party cannot seek a divorce, or an annulment of his or her marriage, from his or her spouse, by a declaratory judgment: 147 Pa. Superior Ct. p. 573, And this is not the forum to try which one is most at fault. It is a *legal right* which is here involved and it should not be complicated with, nor decided upon, ex-

traneous issues. Decisions twisted to meet supposed hard cases make bad law.

The assignments of error are overruled and the judgment is affirmed at the costs of the appellants.

Judge KENWORTHEY dissents for the reasons expressed in his previous opinion reported in 147 Pa. Superior ·Ct. at page 582 and 25 A. (2d) at page 120.