[Civ. No. 7106. Third Dist. Apr. 26, 1945.]

WINONA MARSHALL, Respondent, v. CARLOS MARSHALL, Appellant.

Johnson & Hogan for Appellant.

Lawrence Edwards and Chas. H. Epperson for Respondent.

ADAMS, P. J.—On April 10, 1942, plaintiff and respondent, Winona Marshall, filed an action for divorce against defendant and appellant, Carlos Marshall, in the Superior Court of San Joaquin County, of which county she was then a resident. Summons was served upon defendant in Plumas County on June 4, 1942, and on September 26th of the same year defendant filed an answer and cross-complaint, praying that he be awarded a decree of divorce against cross-defendant on the ground of extreme cruelty, that he be awarded all of the community property of the parties and the custody of their minor child. Plaintiff filed an answer to defendant's cross-complaint October 1, 1942, and thereafter *on the motion of defendant* and cross-complainant said action was set for trial. After hearing of the cause and the waiver of findings, an interlocutory decree was rendered on January 9, 1943, in favor of plaintiff, and she was awarded alimony in the sum of $30 per month, the custody of the child and the sum of $40 per month for his support. The community property of the parties was divided between them.

In August, 1943, defendant was in arrears in his payments

under the decree, and the trial court ordered that an execution issue, directed to the Sheriff of Sacramento County.

On September 16, 1943, defendant, appearing by his present counsel, who had not represented him in the divorce proceedings, served and filed a notice of motion to set aside the levy of the writ of execution, on the ground that the interlocutory decree of divorce was void and without legal force or effect. The motion was accompanied by an affidavit of one of defendant's attorneys in which it was alleged, on information and belief, that defendant, under the name Don Carlos Marshall, had prior to November 2, 1942, filed a complaint for divorce from plaintiff in the State of Nevada, that on November 2, 1942, a decree of absolute divorce had been granted to him, that by reason of said Nevada decree the parties had been restored to the status of single persons, and that at the date of the granting of the interlocutory decree in California the parties to said action were not husband and wife. Hearing on defendant's said motion was had on April 20, 1944, testimony was adduced, and the motion of defendant was denied. From that order this appeal was taken.

The record before us contains a transcript of the testimony taken and documentary evidence introduced at the hearing of defendant's motion. Appellant, who was a locomotive engineer, himself testified that he was employed by the Western Pacific Railway Company for many years prior to April, 1942, and just prior to said date was employed on a run between Keddie, California, and Bieber, California; that he applied for a transfer to Nevada, and when same was granted left California on April 5, 1942, and went to Reno, Nevada; that the next day he went to Winnemucca, where he was employed on a run between Winnemucca and Sand Pass, Nevada; that on May 19th or 20th he "moved out of Nevada" and returned to Quincy, California, having bid for a run in California; that he worked in California until October when he was assigned to a run between Portola, California, and Winnemucca, Nevada; that he would be in the latter place only between runs; that before going to Nevada he had lived at Payne's Cabin, Quincy, until April 5, 1942, and that he resumed his residence there when he came back to California in May, 1942.

The record in the Nevada action was introduced in evidence and shows that the complaint was filed May 18, 1942, just before Marshall returned to California; that service of sum-

mons on Mrs. Marshall was made by publication and the service of a copy of the summons on Mrs. Marshall at Stockton on June 1, 1942; and that on November 2, 1942, the Nevada proceeding was heard and a decree of divorce entered. Marshall at that time appeared and testified that he resided at Winnemucca and had resided there since the 4th day of April; that he was in the State of Nevada continuously after April 6th until the 18th day of May when his company sent him out of the state for a little while, but that he was now back in Nevada, and that Winnemucca was his permanent home. No mention was made by him of the divorce proceeding pending in California, though he had not only filed his answer and cross-complaint in that proceeding on September 26, 1942, but also had appeared personally there in June when the court heard a motion for support pendente lite, and later had appeared before the children's court of conciliation.

After the hearing in the proceeding now before us the trial court filed a memorandum opinion which is included in the record before us. It appears therefrom that the court concluded that Marshall never acquired a bona fide residence in Nevada, but that he went to that state for the sole and only purpose of obtaining a divorce and with the intent to leave that state as soon as he had accomplished his purpose; and that the divorce in Nevada was obtained fraudulently. The evidence amply sustains this conclusion. During his stay in Nevada in April and May, 1942, gas and electric service was maintained in Marshall's name at his place of residence in Quincy. On May 11, 1942, while he claims that he was a resident of Nevada, he wrote a letter to the American Trust Company, at Oakland, and gave his address as "Box 972, Quincy, Calif." Also in a letter to a real estate firm in Stockton, dated "5-25-42," he gave the same address at Quincy. Other communications sent by him during May, June, July, August and September, 1942, gave this same return address. In a letter to his son written from Nevada, dated May 12, 1942, he said, "I don't think I will have to stay here much longer." And at the very time that he testified in the Nevada court that Winnemucca was his permanent home, he was actually residing in Quincy, California, and had been since about May 18th; and he continued to reside there after the decree was entered.

Appellant's counsel in his briefs before this court apparently concedes that the evidence introduced at the hearing of his motion is sufficient to show that Marshall gave perjured testimony in the Nevada court, and that he never acquired a bona fide residence in that state; but it is contended, nevertheless, that the Nevada decree is valid on its face, that the fact that it is based upon false testimony given by Marshall is not ground for setting it aside, and that even though Marshall was never a bona fide resident of that state the California courts are compelled to give full faith and credit to its decree; and that since, by that judgment, the parties to this proceeding ceased to be husband and wife on November 2, 1942, the California court had no jurisdiction at the time it made and entered its interlocutory decree, and that the execution issued in the action was of no force and effect. In short, he contends that where a judgment of a foreign state is valid upon its face, it must be given full faith and credit in every other state, regardless of the fact that it was obtained by fraud, and though the court of such foreign state was actually without jurisdiction to render such judgment. He asserts, though without citation of authority for it, that the Nevada decree could not be set aside in that state. The decisions of the Nevada courts are to the contrary. (See *Fleming* v. *Fleming*, 36 Nev. 135 [134 P. 445]; *Presson* v. *Presson*, 38 Nev. 203 [147 P. 1081]; *Walker* v. *Walker*, 45 Nev. 105 [198 P. 433]; *Latterner* v. *Latterner*, 51 Nev. 285 [274 P. 194]; *Lamb* v. *Lamb*, 57 Nev. 421 [65 P.2d 872]; *Barber* v. *Barber*, 47 Nev. 377 [222 P. 284, 39 A.L.R. 706].)

In support of his contention that the judgment of the Nevada court is necessarily binding here, appellant cites *Estate of Morris*, 56 Cal.App.2d 715 [133 P.2d 452], from which he quotes extensively, especially pages 720 to 723 wherein *Williams* v. *North Carolina*, 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273], is cited and quoted. In *Estate of Morris*, John F. Morris, aged ninety-two years, adopted his niece Winifred R. Morris, aged sixty-one years, in Rhode Island, in conformity with the laws of that state which authorized such an adoption. The parties came to California where both died and their respective estates were administered; and in the course of the probate proceedings it was contended that, since the laws of California did not sanction the adoption of adults, the decree of the Rhode Island court need not be given

full faith and credit as the adoption laws of that state were contrary to the public policy of this state. It was conceded in that case that the adoption proceedings in Rhode Island were regularly and duly had in accordance with the laws of that state. No fraud or irregularity therein were alleged or relied upon. And all that our court held was that California was bound to give full faith and credit to the judgment notwithstanding a claimed conflict with the announced policy of this state. Therefore, there is nothing in that case which conflicts with the decision under review here.

Nor do we find anything in the decision of the United States Supreme Court in *Williams* v. *North Carolina, supra,* that supports appellant's contentions. There the court specifically stated in its opinion that a suit for divorce is one in which domicile of the plaintiff in the state of the forum is essential to give the court jurisdiction which will entitle the divorce decree to extraterritorial effect, at least where the defendant has neither been personally served nor entered an appearance. It said, page 302 (L.Ed. 288), that it was assuming that petitioner had a bona fide domicile in Nevada, and not that the Nevada domicile was a sham; and that it was not reaching the question as to the power of North Carolina to refuse full faith and credit to Nevada decrees because, contrary to the findings of the Nevada court, North Carolina found that no bona fide domicile was acquired in Nevada.

The exact question presented in the case before us has, however, been decided in *Bell* v. *Bell,* 181 U.S. 175 [21 S.Ct. 551, 45 L.Ed. 804], and *Streitwolf* v. *Streitwolf,* 181 U.S. 179 [21 S.Ct. 553, 45 L.Ed. 807], both of which hold that a decree of divorce is not entitled to full faith and credit when it has been granted on constructive service by the courts of a state in which neither spouse is domiciled. In the former case Mrs. Bell brought suit for divorce in New York. Defendant appeared in the case and pleaded a divorce decree obtained by him in Pennsylvania. Plaintiff, in reply, denied that the Pennsylvania court had any jurisdiction to grant the decree, alleging that she had not been served with process in the action and that neither she nor her husband ever was a resident or citizen of Pennsylvania. The New York court, on what was held to be sufficient evidence, found that the husband had never acquired a residence in Pennsylvania, and granted a

divorce to the plaintiff wife. The Supreme Court of the state affirmed the judgment, and the matter went to the United States Supreme Court on writ of error. That court held that upon the record the Pennsylvania court had no jurisdiction of the husband's suit for divorce because neither party had a domicile in Pennsylvania, and that the decree of divorce was entitled to no faith and credit in New York or any other state. That case is cited in the Williams case (317 U.S. p. 291) and held not there applicable; but its validity is not challenged. It has been cited and followed in numerous decisions by the courts of the several states since the decision in the Williams case, and the latter case distinguished. (See *Davis* v. *Davis,* —— Ohio App. —— [57 N.E.2d 703] ; *Wilkes* v. *Wilkes,* 245 Ala. 54 [16 So.2d 15, 16] ; *Atkins* v. *Atkins* 386 Ill. 345 [54 N.E.2d 488, 489] ; *Shuart* v. *Shuart,* 183 Misc. 270 [51 N.Y.S.2d 359] ; *Reese* v. *Reese,* 268 App.Div. 993 [51 N.Y.S.2d 685] ; *Hultz* v. *Hultz,* 51 N.Y.S.2d 301; *Kraunz* v. *Kraunz,* 51 N.Y.S.2d 433; *Wolff* v. *Wolff,* 134 N.J.Eq. 8 [34 A.2d 150, 158] ; *Melnick* v. *Melnick,* 154 Pa.Super. 481 [36 A. 2d 235, 240].) Our courts in numerouse cases have passed upon the validity of divorce decrees granted in other jurisdictions, and where they have found that same were secured upon simulated or pretended residence alone, have not hesitated to declare them invalid. (See *Brill* v. *Brill,* 38 Cal. App.2d 741 [102 P.2d 534] ; *Ryder* v. *Ryder,* 2 Cal.App.2d 426 [37 P.2d 1069] ; *Estate of McNutt,* 36 Cal.App.2d 542 [98 P.2d 253] ; *Estate of Bruneman,* 32 Cal.App.2d 606 [90 P.2d 323] ; *DuQuesnay* v. *Henderson,* 24 Cal.App.2d 11 [74 P.2d 294] ; *Bruguiere* v. *Bruguiere,* 172 Cal. 199 [155 P. 988, Am.Cas. 1917E 122]. Also see *Crouch* v. *Crouch,* 149 P.2d 437, hearing in Supreme Court granted August 3, 1944.)

In the Streitwolf case, hereinabove cited, the plaintiff wife, on August 17, 1896, filed suit for divorce in New Jersey where the parties had lived as husband and wife until August 3rd of that year, and the husband was served with summons personally in New Jersey. On August 9, 1897, the husband filed a suit for divorce in North Dakota and caused summons to be personally served on the wife in New Jersey. On August 19th the husband filed an answer to the wife's suit in New Jersey, but made no reference therein to the suit in North Dakota. On September 7, 1897, the wife filed an action in New Jersey, seeking an injunction against the suit in North Dakota, alleging

that the domicile of both parties was in New Jersey and that the husband's pretended residence in North Dakota was wholly fictitious and fraudulent; that she had not appeared in that suit. Though a temporary injunction was issued in that suit, the husband obtained a decree in the North Dakota court on October 4, 1897, which recited that "plaintiff now is and for more than ninety days prior to the commencement of this action has been in good faith a resident of the State of North Dakota." The wife then filed in the New Jersey divorce court a supplemental bill alleging that the North Dakota decree was void for want of jurisdiction of the subject-matter and of the wife as a party and was secured by fraud and in contempt of the court of chancery of New Jersey. On trial of the issues in the divorce action evidence was adduced which was held to be sufficient to sustain the contentions of the wife, and the court held that the husband had no bona fide domicile in North Dakota, that the judgment there was secured by fraud and imposition on the court, and that the court there had no jurisdiction. The United States Supreme Court in affirming that judgment said, page 183 (L.Ed., p. 810):

"The law of North Dakota requires a domicil in good faith of the libellant for ninety days as a prerequisite to jurisdiction of a case of divorce. *Smith* v. *Smith*, 7 N.D. 404, 413, 75 N.W. 783. The facts in evidence warranted, and indeed required, the finding that the husband had no bona fide domicil in the state of North Dakota, when he obtained a divorce there; and it is not pretended that the wife had an independent domicil in North Dakota, or was ever in that state. The court of that state therefore had no jurisdiction."

The Supreme Court of the United States is the final arbiter as to the meaning of and the limitations upon the full faith and credit clause of the Constitution of the United States (*Milwaukee County* v. *M. E. White Co.*, 296 U.S. 268, 274 [56 S.Ct. 229, 80 L.Ed. 220, 226]; *Williams* v. *North Carolina, supra*, at page 302 [L.Ed. p. 288]), and whatever may be its determination, if any, on the point before us when it renders its second opinion in the Williams case—which case is again before it after retrial in North Carolina and affirmance by the North Carolina Supreme Court of a judgment of conviction (*State* v. *Williams*, 224 N.C. 183 [29 S.E.2d 744]) —this court is constrained to follow the decisions in *Bell* v. *Bell*, and *Streitwolf* v. *Streitwolf*, which are still the law of

the land and will be until reversed by the Supreme Court of the United States, the court of last resort.

As for appellant's argument that a judgment or decree cannot be set aside merely upon a showing that same was procured by and based upon false testimony, it is not pertinent, for the Nevada decree was not declared invalid upon that ground, but because the testimony shows what is practically admitted, that Marshall was never a bona fide resident of Nevada whose courts had no jurisdiction, and that he perpetrated a fraud upon the Nevada court by testifying that Winnemucca was his permanent home at a time when he was actually making his home in Quincy, California. █ And it might be added that when Marshall appeared in the California court and asked for affirmative relief by filing a cross-complaint for divorce, and when he appeared and testified in that divorce proceeding without either pleading or referring to the action in Nevada, he submitted himself to the jurisdiction of that court and sought affirmative relief by way of a decree on his cross-complaint. Under these circumstances he *ought not* now be heard to say that that court had no jurisdiction. (See *Spitzer* v. *Superior Court,* 74 Cal.App. 494, 498 [241 P. 270] ; *Rideaux* v. *Torgrimson,* 12 Cal.2d 633, 638 [86 P.2d 826].)

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.