MARY C. MARTIN, complainant-appellant,

*v.*

WILLIAM MARTIN, defendant-respondent.

[Submitted February 3d, 1942.  Decided May 25th, 1942.]

*Mr. Joseph M. Kiell (Mr. David M. Litwin,* of counsel), for the appellant.

*Mr. William Martin, pro se,* for the respondent.

The opinion of the court was delivered by

RAFFERTY, J.

This appeal is from a final decree of dismissal of a bill for separate maintenance filed by Mary C. Martin against her husband, William Martin. The husband pleaded in avoidance that he did not abandon complainant but that a decree of divorce between the parties had been entered in the State of Florida on May 11th, 1940. Replying thereto complainant pleaded that she was without knowledge of the entry of the decree of divorce in Florida and alleged lack of jurisdiction in the Florida court and fraud.

The factual situation appears to be that the parties were legally married on May 6th, 1938, and took up marital residence at Belmar, Monmouth County, where both had resided for more than ten years previous to the marriage. They were

engaged in the restaurant business in Belmar and in the fall or early winter of each year for several years prior to 1938, and thereafter, they would go to Florida for a winter residence, returning to Belmar in the spring or early summer. Mrs. Martin testified that these trips to Florida were made in contemplation of conducting a seasonal restaurant business in that state, but at no time was it ever considered that they would establish their legal residence there.

In his own behalf Mr. Martin testified that the parties had intended to establish a permanent residence in Florida for some time and that when they last left Belmar in November, 1939, it was with the intention of remaining in Florida. He testified that he established a residence in the City of Miami, purchased a property and set up his business. During the giving of this testimony on direct examination he also made the observation, "Really, I would have stayed down if business had gone along all right."

On or about March 10th, 1940, he found that Mrs. Martin had left their residence in Florida and had taken her belongings, without advising him that she intended to leave. Taken alone this might support an inference of abandonment on her part but the evidence throughout the case is clear that Mrs. Martin returned to Belmar at her husband's suggestion for the purpose of closing a real estate transaction in which Mr. Martin admittedly participated and shared the proceeds. Immediately upon her departure for Belmar he instituted suit in Florida for divorce on the grounds of mental cruelty. Within a short time after the entry of the divorce decree he returned to Belmar and has since remained in that municipality. Mr. Martin explains that he left Florida with some relatives with the intention of visiting the New York World's Fair and thereafter to tour New England and thence to return to Florida, but upon visiting his son, who was also engaged in the restaurant business in Belmar, he was prevailed upon by the son to remain at Belmar to assist in the operation of the son's restaurant business. In this turn of events he abandoned his intention to visit New England. His relatives returned to Florida. In this latter feature Mr. Martin was supported by his son.

Just prior to Labor Day, 1940, Mrs. Martin instituted the present suit and it is the contention of Mr. Martin that his continuance in residence at Belmar has been under the compulsion of a writ of *ne exeat* issued herein.

Opposed to the testimony of Mr. Martin and supporting the position of the wife we have the testimony of a disinterested and evidently reluctant witness that just prior to leaving Belmar in November, 1939, Mr. Martin stated to him that he was going to Florida and "that he would be free when he got back." Another Belmar resident who also made winter trips to Florida and often visited the Martins at their residence in that state, testified that as she was leaving to return to Belmar in March, 1940, she called on Mr. Martin to bid him good-bye and that he said to her, "I'll be seeing you soon in Belmar." These incidents were denied by Mr. Martin. A copy of the decree of divorce entered in Florida was introduced in evidence.

Other matters incident to this suit need not now be discussed in view of the disposition hereafter made. These matters were not passed upon by the advisory master as his dismissal of the suit was based upon his judgment respecting the validity of the Florida decree.

That decree must be declared to be invalid for fraud practiced upon the Florida court. The testimony of appellant that he "would have stayed down if business had gone along all right" discloses, in itself, a mental reservation fatal to the yielding up of New Jersey residence and the acquiring of a Florida residence. The testimony of the distinterested witnesses above mentioned convincingly demonstrates that he never intended to permanently leave this state and that the claimed residence in Florida and the explanation of his return to this jurisdiction are mere pretense and fiction. As valid residence in Florida was basic to the jurisdiction of the Florida court it is unnecessary to consider other points raised by appellant.

The governing legal principles and sources of authority involved herein are adequately treated in *Sprague* v. *Sprague, 131 N. J. Eq. 104.*

The decree appealed from is reversed. The cause is

remanded to the Court of Chancery for further proceeding in accordance herewith.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.