Commonwealth ex rel. Esenwein *v.* Esenwein, Appellant.

Argued October 1, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Sidney J. Watts,* of *Baker & Watts,* with him *Fred C. Houston,* for appellant.

*Jacob Seligsohn,* with him *N. J. Lippard,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1944:

William F. Esenwein appeals from judgment of the Superior Court affirming the action of the County Court of Allegheny County refusing to revoke an order made for the support of his wife. The parties were married in Pittsburgh in 1899; they separated in 1919. The support order has been in effect since 1922. In 1932 he sued for a divorce on the ground of indignities, but failed: *Esenwein v. Esenwein,* 105 Pa. Superior Ct. 261, 161 A. 425; affirmed, 312 Pa. 77, 167 A. 350. He sued again in 1939 on the ground of desertion but failed again: 141 Pa. Superior Ct. 604, 15 A. 2d 735.

On November 12, 1942, he applied to the County Court for a reduction in the amount of the order. He averred, inter alia, that he had become a resident of Nevada on June 30, 1941, and on September 8, 1941, had obtained a decree of divorce. The court, on December 8, 1942, reduced the order to $75 a month.

On February 1, 1943, he filed the petition now before the court for revocation of the support order on the ground of the Nevada divorce decree, relying on *Williams et al. v. North Carolina,* 317 U.S. 287. To that petition his wife filed an answer averring, inter alia, "that the said proceedings in Nevada resulting in a so-called decision or decree in divorce in favor of petitioner were conceived and executed in fraud both upon the states and courts of Nevada and Pennsylvania."

After hearing, that issue was found in favor of the wife and the petition to revoke was dismissed. The husband appeals.

The question is whether the rejection of the Nevada decree, as ground to revoke the order, is consistent with the full faith and credit requirement of the federal Constitution and the Act of Congress.

There is no doubt of the power of the courts below to inquire into the jurisdictional facts necessary to confer jurisdiction on the Nevada court: *Bell v. Bell*, 181 U. S. 175; *Streitwolf v. Streitwolf*, 181 U. S. 179; *Andrews v. Andrews*, 188 U. S. 15; *German Savings and Loan Society v. Dormitzer*, 192 U. S. 125; *Com. ex rel v. Yarnell*, 313 Pa. 244, 251; Beale, Conflict of Laws (1935), sections 111.1 and 111.2.

In making that inquiry the material to be examined is the record presented; it consists of the support order [1] concededly valid; the husband's petition to revoke, the wife's answer, the evidence, which included the Nevada proceeding and decree, produced at the hearing in the County Court. We must also take into consideration the facts formally admitted at the argument before the Superior Court.[2]

If Esenwein had presented nothing to the County Court but the duly certified divorce decree, he would have shown himself entitled to a revocation of the order unless his wife then produced evidence overcoming the prima facie effect of the decree. But he did not rest on the decree alone; he put in evidence the entire record of the Nevada proceeding leading up to the decree thus affording his wife opportunity to make from it any inferences of fact relevant in the inquiry whether the jurisdictional fact of bona fide domicil existed. These inferences, with

---

[1] The order of March, 1922, was the subject of frequent consideration as the Docket Entries, pages 1a et seq. show.

[2] "Although the record does not reveal it, we were told at the oral argument that during his brief stay in Nevada he stayed at a hotel. We were also told at the oral argument that we could assume he left Nevada immediately after obtaining his divorce."

the admitted facts stated in the opinion of the Superior Court, clearly show that the jurisdictional fact of a Nevada domicil was lacking.

Appellant went to Nevada about the end of June, 1941, lived in a hotel, was divorced September 8, 1941, and left Nevada immediately afterward and established a residence in Ohio. His wife was not served in Nevada and did not appear though notified in accord with Nevada law. In the Nevada proceeding he testified: "Q. When you came to Nevada you came with the intention of making Clark County, Nevada, your permanent place of residence? A. Yes, sir. Q. Have you retained that intention ever since? A. Yes, sir. Q. And you have it now? A. Yes, sir." He gave that testimony on September 8th, received the decree on the same day and left Nevada immediately. His acts spoke louder than his words. If his testimony that on September 8th he had the "intention" of residing in Nevada, had been supplemented by the fact that he would leave the state immediately afterward, the court would have been justified in declining to make a finding that his Nevada domicil was bona fide. The court might very well have said, had it known the additional fact, that while the six-weeks residence required by the Nevada statute was established, his intention to leave immediately afterward prevented a finding that his domicil was in good faith. The prima facie inference is, and the Superior Court was authorized to make it, that, notwithstanding his testimony, he had no intention of making his domicil in Nevada. His Nevada case is no different in legal effect from what it would have been if he had never been in that state but had arranged to have someone falsely impersonate him at the hearing. In our inquiry into the legal effect of the record, a more difficult factual question might have been presented if Mr. Esenwein had given evidence in the County Court to the effect that notwithstanding his testimony in Nevada on September 8th, conditions developed immediately afterward which made it desirable that he should again change his domicil from Nevada to

some other state. But he gave no such evidence; though he was the moving party, he produced nothing to rebut the facts clearly inferable against him on the whole case. The Superior Court was therefore justified in adopting the natural or normal inference that appellant's proceeding in Nevada was a sham and fraud for the purpose of evading the order of the County Court of Allegheny County.

"The essential fact that raises a change of abode to a change of domicil is the absence of any intention to live elsewhere, Story on Conflict of Laws, § 43—or, as Mr. Dicey puts it in his admirable book 'the absence of any present intention of not residing permanently or indefinitely in' the new abode. Conflict of Laws, 2d ed. 111." *Williamson v. Osenton,* 232 U. S. 619, 624. "The intention required for the acquisition of domicil of choice is an intention to make a home in fact, . . ." Restatement, Conflict of Laws, section 19. *Dorrance's Estate,* 309 Pa. 151, 163 A. 303. The essentials of a change of domicil from Pennsylvania or elsewhere to Nevada are not satisfied by the short sojourn in a Nevada hotel. For the purposes for which he now offers the divorce decree, it is not enough that on September 8, 1941, his word was accepted in Nevada, considering that the prima facie inference from his subsequent conduct is that, while testifying, he was misleading that court as to his domiciliary intent. Our conclusion is not inconsistent with the decision in *Williams v. North Carolina,* 317 U. S. 287; on page 302 it was said, "In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was

acquired in Nevada." The question thus reserved in the *Williams* case is the one decided by the courts below against the appellant.

Judgment affirmed at appellant's costs.

---

DISSENTING OPINION BY MR. JUSTICE DREW:

The Chief Justice and I thoroughly disagree with the opinion and decision of the majority, because, in our best judgment, the record in this case is absolutely void of anything better than conjecture and suspicion to support the finding that appellant lacked a bona fide domicil in the State of Nevada at the time he instituted his action for divorce and obtained a decree there. If the judgment of a sovereign state can be lightly set aside, as appears to have been done here, then the full faith and credit clause of the National Constitution and the decision of the Supreme Court of the United States, in *Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. 207, are no protection. It seems to me that the majority completely ignores the fact that merely because its views as to the marriage relationship and the avenues of escape may differ from those of other states, or because there may be a hostile feeling toward decrees in divorce by many courts and among laymen, where the period of residence is comparatively brief, is no legal justification for circumventing the Federal Constitution.

There is no doubt in my mind that a decree in divorce of one state can be collaterally attacked on the ground of want of good faith of domicil in another. While as a general rule a judgment or decree may not be impeached collaterally, a different rule exists if the attack is based upon fraud or want of jurisdiction: *German Savings and Loan Society v. Dormitzer,* 192 U. S. 125, 24 S. Ct. 221; *Hunt v. Hunt,* 72 N. Y. 217; 34 C. J. §815, p. 511. Jurisdiction of the court by which a judgment or decree is rendered in any state may be attacked collaterally in another state: *Thompson v. Whitman,* 85 U. S. 457; *Andrews v. Andrews,* 188 U. S. 14, 23 S. Ct. 237. A bona

fide domicil being a jurisdictional fact, its existence is subject to challenge before the courts of other states, regardless of any recital or finding of "domicil" expressed or implied in the record : Freeman on Judgments, 5th ed., Vol. 3, §1437, p. 2959; Black on Judgments, 2d ed., Vol. 2, §931, p. 1375. It is proper to inquire into the jurisdiction of the court granting a decree in divorce and if it appear that neither party had acquired a bona fide domicil in that state at the time the proceedings were instituted, the decree is open to collateral challenge: *Bell v. Bell*, 181 U. S. 175, 21 S. Ct. 551; *Streitwolf v. Streitwolf*, 181 U. S. 179, 21 S. Ct. 553; Beale on Conflict of Laws, Vol. 1, §111.2, p. 478; Wharton on Conflict of Laws, 3d ed., Vol. 1, §223, pp. 463-4; and, in my opinion, there is nothing in *Williams v. North Carolina*, supra, which in any way should lead one to believe that the court there intended to overrule this previously enunciated principle.

When the foregoing legal principles are applied to the facts of the instant case, it at once clearly appears that unless there was a bona fide domicil acquired by appellant in Nevada when he brought his action for divorce there, his decree was subject to impeachment in this Commonwealth, since admittedly appellee was neither personally served nor entered an appearance in the Nevada proceeding. However, from a most careful study of the entire record here, I am satisfied that there is nothing which could possibly justify the majority of this Court in finding that appellant lacked a bona fide domicil in Nevada.

At the hearing in the County Court, no witnesses were called by either side. Counsel for appellant offered in evidence certain undenied allegations of the petition; an exemplification of the record of the Nevada proceeding, wherein there was a specific finding that appellant was domiciled in that state when he instituted his action there, and competent testimony to support such finding; and requested the court to take judicial notice of various decisions and laws of the State of Nevada; and then

rested. Since a foreign decree, regular on its face, is entitled to a presumption of validity (*Delanoy v. Delanoy,* 216 Cal. 27, 13 P. 2d 719; *Corkum v. Clark,* 263 Mass. 378, 161 N. E. 912), the burden was then shifted to appellee to show by a preponderance of the evidence that appellant was not in fact so domiciled (*Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484). As to where the burden of proof rests under such circumstances, it was said in *Cheever v. Wilson,* 76 U. S. 108: "It is said the petitioner went to Indiana to procure the divorce, and that she never resided there. The only question is as to the reality of her new residence and of the change of domicil. That she did reside in the county where the petition was filed is expressly found by the decree . . . The finding is clearly sufficient until overcome by adverse testimony."

Counsel for appellee, relying primarily upon the untenable defense that the previous decisions of our Pennsylvania courts in refusing to grant appellant's applications for divorce were res judicata of his suit instituted in Neveda, merely offered the following excerpts from appellant's testimony as contained in the Nevada record already in evidence (all of which fully supported the Nevada court's finding of bona fide domicil, rather than challenged it): "Q. Where do you live, Mr. Esenwein? A. Las Vegas. Q. When did you first become a resident of Las Vegas, Clark County, Nevada? A. June 23, 1941. Q. Were you present in the City of Las Vegas, Clark County, Nevada, every day from and including June 23, 1941, to and including August 5, 1941? A. Yes, sir. Q. And you have been here continuously since August 5th? A. Yes, sir. Q. When you came to Nevada you came with the intention of making Clark County, Nevada, your permanent place of residence? A. Yes, sir. Q. Have you retained that intention ever since? A. Yes, sir. Q. And you have it now? A. Yes, sir." In addition to requesting the court to take judicial notice of certain decisions of the State of Nevada, counsel for appellee read into the record the following statements made by

appellant in a deposition taken on November 19, 1942, in Cleveland, Ohio, and which was filed by appellant in this proceeding: "Q. Where do you live, Mr. Esenwein? A. 2635 North Moreland Boulevard, Cleveland, Ohio. Q. Mr. Esenwein, how long have you lived at 2635 North Moreland? A. Since some time in October, 1941. Q. And prior to that time you were a resident of Las Vegas, Nevada? A. Yes, sir."

To acquire a domicil, a party must have his abode in one place, with intention of remaining there; and the elements of domicil are residence and animus manendi: *Di Brigida v. Di Brigida,* 116 N. J. Eq. 208, 172 A. 505. In the instant case, it is not denied that appellant took up a residence in the State of Nevada at the time he brought his action there and retained it until a short time after he obtained his decree. Giving the evidence adduced by appellee the fullest effect possible, at best it raises but a mere suspicion that the animus manendi may have been wanting. Conjecture and suspicion are not enough to rebut the presumption of the validity of a decree of a sister state: *Cheever v. Wilson,* supra. Certainly, such evidence is not the clear and convincing proof which is required. See 21 C. J. S. §100, p. 155.

It is obvious that because appellant on November 19, 1942, in Cleveland, Ohio, stated that he had lived in that city since some time in October, 1941, does not in any way detract from the truthfulness of his testimony given in the Nevada proceeding on September 8, 1941, that he went to that state on June 23, 1941, with the intent of making it his permanent domicil and that he still retained that intention at that time. The record shows that appellant sold his business in the City of Pittsburgh, abandoned his domicil in Pennsylvania and took up one in Nevada, which he later changed to Ohio, and there has resided now for more than two years. This he had a perfect right to do. The mere fact that he procured a divorce in Nevada does not rebut the presumption of the good faith on his part in the acquisition of a domicil there. "The motive with which a change of residence is

made is immaterial so long as there is a real intention to make the new residence a home": Beale, Conflict of Laws, Vol. 1, §22.1, p. 161. Whether appellant's residence in Nevada was long or short is of no moment, since the finding of the court that he had an intention to make that state his domicil during his residence there has not been rebutted. See *Price v. Price,* 156 Pa. 617, 27 A. 291.

Appellant did not give up his domicil in this Commonwealth to evade the order of support here under consideration, for he continued to comply with it for the more than two years he had been a non-resident, and only applied for revocation of the order after the rendition of the decision by the United States Supreme Court, in *Williams v. North Carolina,* supra.

The Court of Appeals of New York, in its recent decision in *In the Matter of the Estate of Anna Holmes, Deceased,* 291 N. Y. 261, on facts quite analogous to those of the instant case, upheld the validity of a Nevada decree in divorce which was there being challenged. From the agreed state of facts there before the court, it appears that respondent-husband left New York State and went to Nevada in June, 1937, and there commenced an action for divorce against his wife, who was a domiciliary of New York, on the ground of extreme cruelty; that the wife did not appear by attorney or in person and was not served personally with a summons, but merely by publication; that respondent obtained a decree in Nevada on September 18, 1937, and on the same day remarried; that in December, 1937, after respondent and his second wife had moved to New York State, the first wife commenced an action against respondent for a divorce on the ground of adulterous conduct with the second wife; that respondent filed an answer averring that he had already obtained a decree in Nevada; that the referee, to whom the case was referred in New York, found that respondent and his first wife had been residents of New York from the date of their marriage to the time of trial; that because of the adultery of respondent, the first wife was entitled to a

decree; that a judgment in her favor became final in September, 1939, and no appeal therefrom was ever taken; that the second wife continued to reside in New York State until her death in January, 1942; that thereafter one Frances M. Lawson applied to the Surrogate's Court for letters of administration upon the estate of the second wife and the respondent-husband filed an answer alleging in substance that he was the husband of the deceased and entitled to letters. On the issue as to whom letters should be granted, the Surrogate held that respondent was not the legal husband of decedent at the time of her death and, therefore, denied his petition, and the Appellate Division reversed and held that the Nevada decree must be recognized in New York State. In upholding the action of the Appellate Division, the Court of Appeals, speaking through Chief Judge LEHMAN, said: "In the case we are now reviewing, the appellant [Frances M. Lawson] has not, in the agreed statement of facts, or by presentation or offer of evidence, except the decision of the referee in the divorce action, challenged the decision of the Nevada court that the plaintiff had acquired a domicile in Nevada sufficient to support the jurisdiction of that court to adjudicate his marital status. Though the appellant has consistently contended that the courts of this State may refuse to give full faith and credit to the Nevada decree he bases that contention primarily, if not exclusively, upon the decision of the Supreme Court of this State in the divorce action instituted here that the Nevada decree was invalid. Since that decision is, as we have said, not binding upon the respondent and since there is no other affirmative proof that the respondent was not domiciled in Nevada when he brought an action for divorce there, we must apply the rule long authoritatively established by the Supreme Court of the United States: 'There can be no doubt that if full faith and credit were denied to a judgment rendered in another State upon a suggestion of want of jurisdiction, without evidence to warrant the finding, this court would enforce

the constitutional requirement. See *German Savings and Loan Society v. Dormitzer, ante,* page 125.' (*Rogers v. Alabama,* 192 U. S. 226 at p. 231, opinion by HOLMES, J.) We have found no case in which this court has heretofore attempted to define the scope of the rule that a judgment of a sister state granting the plaintiff a divorce from a spouse not domiciled in that state nor appearing in the action nor personally served with process there imports that the court had acquired jurisdiction to render a valid judgment *in rem* changing the status of the plaintiff. In many decisions the court has, however, assumed the existence of a presumption, in the absence of evidence to the contrary, that the court had jurisdiction to render judgment, though, doubtless, the validity of the judgment may be impeached by extrinsic evidence. (See *Kerr v. Kerr,* 41 N. Y. 272, 275; *Cross v. Cross,* 108 N. Y. 628, 630; *Matter of Kimball,* 155 N. Y. 62, 68.) Instinct in these and other decisions of this court is the rule that the foreign judgment of divorce will be given full force and effect as a judgment *in rem* dissolving the marriage of the plaintiff until impeached by evidence which establishes that the court had no jurisdiction over the *res.* That rule is in accord with the great weight of judicial authority in this country. (See *Aarnes v. Aarnes,* 172 La. 648; *Howey v. Howey,* 240 S. W. 450, [Mo.] cert. denied, 260 U. S. 730; *Harrington v. Harrington,* 233 Mo. App. 390; *Commonwealth ex rel. Cronhardt v. Cronhardt,* 127 Pa. Super. 501, on rehearing, 135 Pa. Super. 117; *Goodloe v. Hawk,* 113 F. 2d 753, 755, 756, App. D. C.; *Dry v. Rice,* 147 Va. 331, 338; *McFarland v. McFarland,* 179 Va. 418, 428.) A different rule has been applied in Massachusetts and perhaps some other jurisdictions, to foreign decrees 'of divorce. See *Commonwealth v. Blood* (97 Mass. 538); *Kelley v. Kelley* (161 Mass. 111); but cf. *Peaslee v. Peaslee* (147 Mass. 171, 180); *Corkum v. Clark* (263 Mass. 378, 382); but academic authority as well as the weight of judicial authority is opposed to the exclusion of foreign judgments of divorce from the benefit of the presumption of validity

generally accorded to judgments of courts of general jurisdiction (3 Freeman on Judgments, §1426; 2 Black on Judgments, §924; 2 Bishop, New Commentaries on Marriage, Divorce and Separation, §1526). The courts of this State have not refused to apply to judgments of divorce that general presumption."

So, in the instant case, appellee has failed to adduce any affirmative proof that appellant was not domiciled in the State of Nevada at the time he instituted his action there, and therefore this Court is bound to give full faith and credit to the Nevada decree. I would reverse the judgment of the Superior Court and revoke the order of support of the County Court of Allegheny County of December 8, 1942.

Mr. Chief Justice MAXEY joins in this dissent.