Commonwealth ex rel. Meth *v.* Meth, Appellant.

Argued December 11, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and RENO, JJ. (JAMES, J., absent).

*Morton Witkin,* with him *Witkin & Egan,* for appellant.

*Frank J. Marolla, Jr.,* with him *Vincent P. Froio,* for appellee.

OPINION BY RENO, J., March 14, 1945:

A Nevada divorce decree has created the "complicated and serious condition" visualized in *Williams v. North Carolina,* 317 U. S. 287, 299, 63 S. Ct. 207. Respondent defended relatrix' petition for a support order on the ground that he had secured a divorce from her in Nevada, and, alleging that the decree was not accorded full faith and credit in the court below, the respondent has appealed from the order in favor of relatrix. The question for decision is whether the evidence in the record establishes that respondent was a bona fide domiciliary of Nevada at the time of the proceedings resulting in the decree now claimed to be entitled to extra-territorial recognition.

Respondent and relatrix were married in January, 1929, and lived together in Philadelphia, except for periods of temporary separation, until April 1, 1939, when respondent withdrew permanently from their common home and took up residence at other addresses within the city. On May 10, 1939, respondent instituted an action in divorce against relatrix in the courts of Philadelphia County, and the report of the master, recommending the libel be dismissed, was filed on April 25, 1942, and was subsequently approved by the court. Respondent left Philadelphia for Reno on May 16, 1942, and arrived there three days later. On July 1, 1942, he started divorce proceedings in the County of Washoe and on August 4 following, a hearing was held and a decree entered in his favor, on the ground that the par-

ties had lived apart without cohabitation for three years then last past. Relatrix had never appeared in that action either personally or by counsel and learned of its pendency only when substituted service of process was made on her in Philadelphia on July 2, 1942. Respondent left Reno on August 5, 1942, and lived in a hotel in Camden, New Jersey, from August 8, 1942 until November 14 of the same year. In the interim he attended to his business affairs in Philadelphia and was engaged in the litigation of a bill in equity which relatrix had filed to restrain the prosecution of the Nevada action and which was dismissed on November 12, 1942, by agreement of counsel. On November 6, 1942, respondent's secretary secured a divorce in Philadelphia, and a few days later, on November 14, she and respondent started for Reno, where they went through a marriage ceremony on November 18, 1942. On November 22, 1942, the couple removed from Nevada and on November 24 they arrived in West Collingswood, New Jersey, where, on the same day, they moved into the apartment in which they have since made their home, and have become the parents of a child.

At the outset of the hearings on this petition there was introduced in evidence a properly authenticated copy of the Nevada decree in which it was recited that the present respondent "...... was at the time of the commencement of [that] suit, and for more than six weeks prior thereto, continuously has been, and still and now is, an actual and bona fide resident of, and domiciled within, the County of Washoe, State of Nevada, ......" As the testimony taken in the Nevada proceeding is not a part of the record of this case, the bulk of the evidence relied upon by relatrix in contradiction of the finding made by the Nevada court was elicited from respondent himself when he was called by relatrix as for cross-examination or when he was cross-examined after testifying in his own behalf. There is no factual dispute over what respondent actually

did during the period relevant here; the issue resolves itself into a conflict between the inferences to be drawn from the admitted conduct.

In 1929 respondent founded in Philadelphia a surgical instrument distributing business of which he continued to be the proprietor down to the time of the hearings in the court below. Respondent was "disgusted" with the report filed by the master in his local divorce action and determined to go to Reno for the avowed purpose of securing a severance of his marriage, intending, as he said, never to live in Philadelphia again and to make Nevada his permanent home. In the 21 days between the filing of the master's report and respondent's leaving for Reno he asked a serum salesman and a druggist to buy his business, without success. While respondent was in Reno his only bank account, which was used both for business and personal expenditures, remained in Philadelphia, and none was opened at the new location. Respondent testified that it was his intention to re-establish his business in Nevada, but, although in Philadelphia the enterprise occupied his entire time, his only efforts along that line during his eleven-week sojourn in the West were sales of merchandise made to five doctors on a single day and aggregating $28.80. Respondent always had it in mind to come back to close out his business, he said, and he thought it could be accomplished in a few days. After the Nevada decree was entered he telephoned his secretary and was advised, so he testified, of an important crisis in the operations under a contract his company had with another firm which manufactured physicians' office furniture, which emergency required his immediate return. In the three ensuing months when respondent was in the East he did not complete the "few days'" task of disposing of the business, but he nevertheless went back to Reno to be married and with the asserted intention to live there the rest of his life. Respondent stated that when he was in Reno the second

time he did not open a business establishment, and he gave as his real reason for finally leaving Nevada that after four days of her honeymoon his bride was lonely and homesick and that he did the only gallant thing possible under the circumstances. The day of their arrival in West Collingswood they moved into an apartment house and "brought the linens over," but the previous storage place for the linens was not elaborated upon. Since that time neither respondent nor his former secretary has lived or visited in Reno.

Despite the general rule that a judgment or decree cannot be collaterally attacked, it is settled that a decree in divorce granted by one state can be attacked collaterally when recognition is sought for it in another by showing that the forum in which it was rendered was without jurisdiction. *Andrews v. Andrews*, 188 U. S. 14, 23 S. Ct. 237; *Com. ex rel. Saunders v. Saunders*, 155 Pa. Superior Ct. 393, 38 A. 2d 730. Domicile in good faith in the state granting the decree is an essential jurisdictional fact without which the decree is not required to be given effect outside the state where it was secured. *Bell v. Bell*, 181 U. S. 175, 21 S. Ct. 551; *Streitwolf v. Streitwolf*, 181 U. S. 179, 21 S. Ct. 553. Where, however, the libellant in the out-of-state divorce proceeding has acquired a bona fide domicile in the place where the decree was entered, it must be given full faith and credit extra-territorially even though the state where it was procured was never the matrimonial domicile of both spouses and although the respondent entered no appearance in the action and was served only by publication or other form of substituted service meeting the requirements of procedural due process. *Williams v. North Carolina*, supra. While a recital in a foreign decree of the jurisdictional facts necessary to its universal validity is not conclusive outside the state of its origin, *Thompson v. Whitman*, 18 Wall. 457, 21 L. Ed. 897, the decree is prima facie valid and the burden is on the party attacking it to show by a preponder-

ance of the evidence that jurisdiction was in fact lacking. *Com. ex rel. Cronhardt v. Cronhardt*, 127 Pa. Superior Ct. 501, 193 A. 484.

" 'By the term domicile in its ordinary acceptation is meant the place where a person lives or has his home. In a strict legal sense that is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning' " : *Dorrance's Estate*, 309 Pa. 151, 173, 163 A. 303. An individual may change his domicile at will and does so by residing in a new place with a present intention to live there permanently or indefinitely. *Com. ex rel. Esenwein v. Esenwein*, 348 Pa. 455, 35 A. 2d 335. There must be, in addition to physical presence at a given place, an intention to make a home there before a domicile may be acquired. *Melnick v. Melnick*, 154 Pa. Superior Ct. 481, 36 A. 2d 235. A person's motive for changing his domicile is not material, although the existence of a particular reason for taking up a new dwelling place may have an important bearing on whether there ever existed the necessary mental ingredient requisite to effect the change. Restatement, Conflict of Laws, §22. The determination of whether an asserted acquisition of a domicile has actually occurred depends upon whether all the facts taken together indicate the establishment of a permanent residence or merely a temporary sojourn for a particular purpose. *Hunnings v. Hunnings*, 55 Pa. Superior Ct. 261.

It has been decided in two recent cases that where it was shown that a Pennsylvania domiciliary has gone to Nevada, taken up residence in temporary quarters for the period required by the laws of that state, and shortly after receiving a Nevada divorce has moved away and established himself permanently elsewhere, the burden of disproving the good faith of the Nevada domicile was prima facie met. *Com. ex rel. Esenwein v. Esenwein*, supra; *Com. ex rel. Phelps v. Phelps*, 154 Pa.

Superior Ct. 270, 35 A. 2d 530. See, also *Melnick v. Melnick,* supra; *Mascola v. Mascola,* 134 N. J. Eq. 48, 33 A. 2d 864. The only substantial difference presented by this case is that here the record contains testimony by respondent in which he asserted that while he was in Reno he had the fixed purpose of making that city his home and in which he gave his purported reasons for his two departures. Unless the courts are to be reduced to a state of juvenile naivete, they cannot be required to accept self-serving declarations which are wholly at variance with actualities evidenced by the conduct of the party out of whose mouth they came. The burden of proving respondent's state of mind while he was in Nevada was on relatrix, but when her proofs of what he did demonstrate so forcibly what his intentions were, she will not be precluded by his patently flimsy protestations to the contrary. Respondent's activities during the Summer and Fall of 1942 were not those which would have been pursued by any reasonable person intending in good faith to uproot himself from his accustomed locality and re-establish his family and business several thousand miles away. Rather, they evidence a calculated purpose to lend color to his scheme for escaping the obligations of an unsuccessful marriage, and their true nature is not altered by his own interested description of them. *Martin v. Martin,* 132 N. J. Eq. 22, 26 A. 2d 491; *Adams v. Adams,* 191 Ga. 537, 13 S. E. 2d 173; *Grein v. Grein,* 303 Ill. App. 398, 25 N. E. 2d 409. "That actions speak louder than words is sound law as well as proverbial wisdom": *Graham v. Dempsey,* 169 Pa. 460, 462, 32 A. 408.

Order affirmed.