Commonwealth *v.* Petrosky, Appellant.

Argued October 7, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Thomas D. McBride,* with him *Herbert F. Holmes, Jr.,* for appellant.

*Kenneth D. Matthews,* Assistant District Attorney, for appellee.

OPINION BY ROSS, J., January 12, 1951:

This is a prosecution for a violation of section 731 of The Penal Code of 1939, P. L. 872, 18 PS 4731.[1] The

---

[1] "Whoever, being a husband or father, separates himself from his wife or from his children or from wife and children, without reasonable cause, or wilfully neglects to maintain his wife or children, such wife or children being destitute, or being dependent wholly or in part on their earnings for adequate support, is guilty of a misdemeanor . . ."

indictment charges, in substance, that the defendant on June 14, 1948, separated himself from his wife and minor son without reasonable cause and from that day until the date of the indictment (May 4, 1949) wilfully neglected to maintain his wife and child, they being destitute and dependent on his earnings for adequate support. It is conceded that the indictment cannot stand as to the son of the defendant since he was eighteen years of age when the indictment was found and therefore no longer a "child" within the meaning of section 731. The cause was tried in the Criminal Division of the Municipal Court of Philadelphia by the court below sitting without a jury. The defendant was adjudged guilty with respect to his wife, and the court below, in the exercise of the discretion granted it by section 731,[2] suspended sentence upon and during the payment of $100 per month for the support of the wife and upon entry of bond by the defendant for faithful performance of this order. From that judgment and order the defendant has taken this appeal.

The following facts are pertinent: Defendant, his wife and son resided together as a family in the city of Philadelphia for a number of years, the last nine of which were spent at the same address, 3518 Wellington Street, a rented dwelling. Mrs. Petrosky has never left the Wellington Street address. In May of 1945, the defendant's employer, the Greyhound Bus Company, offered him a job in Indianapolis, Indiana. The new job involved a promotion and a considerable increase in salary. Defendant accepted the new position and, leaving his wife and son in Philadelphia, went to Indianapolis where he secured living accommodations at the

[2] "In any such case, the court may suspend sentence upon . . . and during the compliance by defendant with such order, upon entry of bond by defendant with surety approved by the court, conditioned on compliance with such order."

Lincoln Hotel. Defendant has resided at the Lincoln Hotel and has worked in Indianapolis from May 1945 to the date of the indictment, returning to Philadelphia for stays of about one week's duration in May 1945, September 1945, May 1946, September 1946, May 1947, September 1947, and June 1948. The trial judge found as a fact that Mrs. Petrosky was at all times willing to join the defendant in Indianapolis and make a home with him, but that defendant told her not to come and never made any attempt to establish a home for her in that city.

The defendant sent his wife $100 per month until September 1946. In June of 1948, the defendant gave her $1,000 to put in their joint bank account, extracting from her a promise that she would return it to him upon request. Defendant asked for this money in July of 1948, and Mrs. Petrosky sent him $800 and seven $25 war savings bonds. Defendant has made no contribution to his wife's support since that time.

On March 17, 1949, Mrs. Petrosky filed a petition for support under section 733 of The Penal Code of 1939, and written notice of this proceeding was received by the defendant in Indianapolis on March 19, 1949. On April 6, 1949, the defendant filed a complaint in divorce in Indianapolis, and in an ex parte proceeding following service by publication in accordance with Indiana law, a final decree of divorce was entered in favor of the defendant by the Indiana court on June 15, 1949.

Two basic questions are raised by this appeal: (1) Was the defendant properly convicted of a violation of section 731 of The Penal Code of 1939; and if so, (2) was it within the power of the court below to enter an order directing defendant to support his alleged wife.

A husband who separates himself from his wife without reasonable cause or who wilfully neglects to

maintain his wife is guilty of a misdemeanor within the meaning of section 731 if such wife is destitute *or* wholly or in part dependent on her earnings for adequate support. It is argued on behalf of the defendant that he did not separate himself from his wife without reasonable cause in that he left her originally to take a better job in Indianapolis, and returned to that city each time to keep this job. Aside from the fact that by the express terms of the statute the offense can be committed as well by a wilful neglect to maintain a wife as by a separation from her without reasonable cause, the separation in the instant case, in legal contemplation, consisted of the defendant's failure to provide a home for his wife in Indiana. That separation, as distinguished from the original parting, was without reasonable cause. To acquiesce in the defendant's contention would be to permit a husband who has left his home and wife for a cause, reasonable at the time of leaving, to avoid the sanctions of section 731 even though he thereafter decides to live apart from his wife, and refuses to maintain her. It is not reasonable to assume that the Legislature intended to so limit the scope of the provision especially in view of its purpose, i.e., to punish and thus deter the husband from separating from or failing to maintain his wife. *Com. v. Widmeyer,* 149 Pa. Superior Ct. 91, 196 A. 883; *Com. v. George,* 358 Pa. 118, 56 A. 2d 228. There is in the record ample evidence to support a conclusion by the court below that defendant wilfully neglected to maintain his wife, an act equal in grade to a separation from her without reasonable cause. There is evidence also to support the conclusion of the court below that defendant's wife was destitute, or, at the very least, dependent wholly or in part on her earnings for adequate support. The defendant was properly convicted for a violation of section 731.

The second and more difficult question raised by this appeal is whether the court below could properly enter an order directing defendant to support his wife. The answer to this question hinges upon the validity or invalidity of the Indiana divorce decree. The scope of our inquiry in regard to the Indiana divorce is limited to the question of whether or not defendant was a bona fide domiciliary of that state. In *Smith v. Smith,* 364 Pa. 1, 70 A. 2d 630, it is stated: "Under Williams v. North Carolina (No. 1), 317 U. S. 287, [63 S. Ct. 207, 87 L. Ed. 279, 143 A. L. R. 1273,] a divorce granted by a court of the bona fide domicile of either spouse is valid and must be given full faith and credit. The only ground upon which a divorce decree of another jurisdiction may be attacked is that it was not the bona fide domicile of either spouse: Williams v. North Carolina, 325 U. S. 226, [65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366;] Com. ex rel. Esenwein v. Esenwein, 348 Pa. 455, 35 A. 2d 335." It is the position of the Commonwealth in the present appeal, and the conclusion of the court below, that defendant was not domiciled in Indiana at the time the Indiana court granted him his divorce decree; and, for that reason, the decree is not entitled to full faith and credit.

In its opinion the court below stated: ". . . the burden was on this defendant to prove affirmatively the change of domicile to Indiana . . ." In support of its holding the court below cites *Smith v. Smith,* supra, 364 Pa. 1, 70 A. 2d 630, and the cases cited therein. It is to be noted that neither *Smith v. Smith* nor any of the cases cited therein in connection with the burden of proving domicile dealt with a situation involving a decree of a sister state. The factor absent in those cases and present in the instant one is the Full Faith and Credit clause of the Federal Constitution, which makes it the duty of a state in which extra-territorial recognition is sought for the decree of a

sister state to accord such decree prima facie validity. *Esenwein v. Com. ex rel. Esenwein,* 325 U. S. 279; *Williams v. North Carolina,* 325 U. S. 226. The burden is therefore on the litigant who would escape the operation of a judgment decreed in another state. "The fact that the Nevada court found that they [the libellants from North Carolina] were domiciled there is entitled to respect, *and more.* The burden of *undermining the verity which the Nevada decrees import rests heavily upon the assailant.*" *Williams v. North Carolina,* 325 U. S. 226. (Italics supplied.) See also *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484, in which case the wife petitioned for support and the husband offered by way of defense an absolute decree of divorce granted him in Maryland. In reversing the trial court which had entered an order granting support we said, at page 508: "However, the Maryland decree offered in evidence in the present case by the defendant husband is presumed to be valid, and *the burden was upon the relator to show by a preponderance of the evidence,* that defendant was not in fact domiciled in Maryland when he applied for a divorce there, or that there were other facts negativing the jurisdiction of the Maryland court." In accord in requiring a "preponderance of the evidence" are *Com. ex rel. Meth v. Meth,* 156 Pa. Superior Ct. 632, 41 A. 2d 752, and *Com. ex rel. McCormack v. McCormack,* 164 Pa. Superior Ct. 553, 556, 67 A. 2d 603.

In view of the above authorities, we are of the opinion that the court below was in error in placing upon the defendant herein the burden of proving domicile in Indiana. On the contrary, we hold that the burden was upon the Commonwealth, as the party attacking the validity of the Indiana decree, to show *by a preponderance of the evidence* that defendant was not domiciled in Indiana when he applied for a divorce there, or that there were other facts negativing

the jurisdiction of the Indiana court. The defendant's domicile is a conclusion to be drawn from the facts in evidence. *Smith v. Smith,* supra, 364 Pa. 1, 5, 70 A. 2d 630; *Dorrance's Estate,* 309 Pa. 151, 163 A. 303.

The burden of showing by a preponderance of the evidence that jurisdiction was in fact lacking—that defendant was not a bona fide domiciliary of the divorcing state—can be met by showing that the libellant seeking recognition of an out-of-state divorce decree *went* to the divorcing state not to establish a *domicile* but to set up a *residence* so that he might secure a divorce. *Com. ex rel. Esenwein v. Esenwein,* supra, 348 Pa. 455, 35 A. 2d 335; *Com. ex rel. Phelps v. Phelps,* 154 Pa. Superior Ct. 270, 35 A. 2d 530; *Com. ex rel. Meth v. Meth,* supra, 156 Pa. Superior Ct. 632, 41 A. 2d 752; *Com. ex rel. Barker v. Barker,* 160 Pa. Superior Ct. 263, 50 A. 2d 739; *Com. v. Berfield,* 160 Pa. Superior Ct. 438, 51 A. 2d 523; *Com ex rel. De Gosz v. De Gosz,* 161 Pa. Superior Ct. 286, 54 A. 2d 55; *Com. ex rel. Bowser v. Bowser,* 163 Pa. Superior Ct. 494, 63 A. 2d 117. Without significant deviation these cases fit into the following factual groove: An unsuccessful attempt to secure a divorce in Pennsylvania, or at least an outstanding support order in favor of the wife; a trip to another state; a suit for divorce brought immediately after residence requirements had been met; a prompt departure from the divorcing state following the granting of the decree. To be sure, the libellants in the later cases in this group made more or less elaborate attempts to avoid the doctrine of the previous cases, but in each of those cases the attempt was so patently flimsy as to be without significance. We think it clear that the Commonwealth has failed to present evidence which would justify placing the instant case alongside the above group of cases. It is not disputed that the defendant's reason for going to Indiana originally and for return-

ing there after each visit to Philadelphia was his desire to take and keep a better job than was available to him in Philadelphia. Defendant was physically within the State of Indiana for nearly *four years* before bringing suit for divorce there. There is no showing that the defendant left the divorcing state immediately after having been granted his decree of divorce, or, for that matter, that he is not still there.

It would seem that the only avenue of attack open to the Commonwealth lies in showing that the defendant did not intend to reside in Indiana permanently or for an indefinite period. To constitute the new domicile two things are indispensable: first, residence in the new locality, and second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. *Barclay's Estate,* 259 Pa. 401, 405, 103 A. 274; *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 343, 10 A. 2d 888; *Huston v. Huston,* 130 Pa. Superior Ct. 501, 197 A. 774. The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely. *Price v. Price,* 156 Pa. 617, 626, 27 A. 291. The evidence tending to show that defendant did not intend to reside in Indiana permanently or for an indefinite period may be summarized as follows: First, defendant returned to Philadelphia periodically where he "lived" with his wife; second, defendant procured a Pennsylvania automobile operator's license in 1948; third, Mrs. Petrosky's testimony to the effect that defendant told her that he expected to be transferred back to Philadelphia. In *Hood's Estate,* 21 Pa. 106, the question was whether the decedent's domicile was Pennsylvania or Cuba, where he had resided for some

17 years, and it was held that decedent's occasional visits, on business or pleasure, to the land of his birth had little effect upon the question of where he was domiciled. In regard to Mrs. Petrosky's testimony that defendant told her he expected to be transferred back to Philadelphia, it need only be observed that defendant flatly denied making any such statement and the trial judge, as the trier of fact, failed to resolve the controversy.

It is our conclusion that the Commonwealth has failed to show by a preponderance of the evidence that the defendant was not domiciled in Indiana. We are of the opinion that, taken in its most favorable light, the Commonwealth's evidence did no more than raise a doubt as to where defendant's domicile really was. Such a showing is not sufficient to rebut the presumption arising from the rendition of the Indiana decree (*Com. ex rel. Cronhardt v. Cronhardt,* supra, 127 Pa. Superior Ct. 501, 509, 193 A. 484) and, consequently, the Indiana divorce decree is entitled to full faith and credit in this Commonwealth. From this conclusion it follows that the defendant is not liable for the support of Mrs. Petrosky, his divorced wife, because in Pennsylvania it is well settled that a decree of absolute divorce terminates the husband's obligation to support a former spouse. *Com. v. Parker,* 59 Pa. Superior Ct. 74; *Com. ex rel. Kurniker v. Kurniker,* 96 Pa. Superior Ct. 553; *Com. ex rel. Di Donato v. Di Donato,* 156 Pa. Superior Ct. 385, 40 A. 2d 892.

Order of the court below for the support of defendant's former wife is reversed.