364 A.2d 431

**Rosemary Buckley WATSON**

v.

**William R. WATSON, Jr., Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

Joseph P. Caranci, Jr., George J. McConchie, Media, for appellant.

Howard Richard, Alexander A. DiSanti, Michael A. Paul, Upper Darby, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred when it determined that the courts of Pennsylvania are not obligated to give his Nevada divorce full faith and credit.

The appellant, William Watson, Jr., a physician, and the appellee, Rosemary Buckley Watson, were married on June 12, 1943. During the course of their marriage, the parties had four children. The parties separated in September, 1963, at which time an agreed order of support in the amount of $100 per week was entered. On June 24, 1970, custody of the parties' youngest child, William Watson, III, was awarded to the appellant and a revised order of support for $110 per week was entered. On July 4, 1970, the appellant, together with his son William, left Pennsylvania and moved to Incline Village, Nevada.[1] Prior to his departure, the appellant voluntarily terminated his staff appointment at Bryn Mawr Hospital, rented his Pennsylvania home, and sold all his home furnishings. Appellant also arranged to begin the practice of medicine in a California hospital upon his arrival in Nevada.[2]

After the appellant arrived in Nevada, he finalized his employment arrangements, and thereafter began his employment as the head of the emergency room, coronary care unit, and newborn nursery of a California hospital. Appellant also rented a furnished home in Incline

1. Incline Village is located at the northeastern tip of Lake Tahoe, Nevada.
2. The hospital is located approximately four miles from the Nevada border. Appellant chose to work in California because he was already licensed to practice there.

Village,[3] obtained a Nevada driver's license, registered his automobile in Nevada, and registered to vote, and voted, in Nevada. Appellant's son, William, was enrolled in and attended school in Nevada. On August 21, 1970, the appellant filed a complaint in divorce against appellee, and on September 22, 1970, a decree granting appellant's divorce from appellee was issued. Shortly thereafter, the appellant married Margaret Burgents in Nevada.

Appellant remained in Incline Village until April, 1972, at which time he, his wife Margaret and son, William returned to Pennsylvania. After agreeing to pay his tenant several months' rent as compensation for the tenant's inconvenience, the appellant was able to regain possession of his Pennsylvania home. Thereafter, the appellant applied for a Pennsylvania driver's license, registered his automobile in Pennsylvania, and registered to vote in Pennsylvania. In September, 1972, appellant and his second wife Margaret were separated. Appellant filed a complaint in divorce against his second wife in January, 1974. A divorce decree was issued on April 17, 1974. Shortly thereafter, appellant married for a third time.

Despite appellant's divorce from appellee, he continued paying the June 24, 1970 support award until January, 1975. On April 2, 1975, appellant filed a petition to vacate the support award and cancel all arrearages. Following appellee's answer, a hearing was held on April 25, 1975. On January 9, 1975, the lower court determined that the appellant's Nevada domicile was not bona fide, and, therefore, the Nevada divorce was not entitled to full faith and credit.[4] Thus, the lower court dismissed appellant's petition to vacate. This appeal followed.

3. The appellant apparently lived in three such homes during his stay in Nevada.

4. The lower court initially issued its opinion on December 30, 1975. The lower court amended its opinion on January 9, 1975, because "certain statements and findings [were] predicated upon

It is well-established that a husband's obligation to support his wife is terminated by a valid divorce decree. See, e. g., *Commonwealth ex rel. McVay v. McVay,* 383 Pa. 70, 118 A.2d 144 (1955); *Commonwealth ex rel. Esenwien v. Esenwien,* 348 Pa. 455, 35 A.2d 335 (1944), aff'd sub nom. *Esenwien v. Pennsylvania ex rel. Esenwien,* 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608 (1945); *Commonwealth ex rel. Lorusso v. Lorusso,* 189 Pa.Super. 403, 150 A.2d 370 (1959); *Commonwealth v. Petrosky,* 168 Pa.Super. 232, 77 A.2d 647 (1951). Thus, if appellant's Nevada divorce decree is valid in Pennsylvania, the support order, as well as all arrearages accruing under that order, must be vacated. On the other hand, if the Nevada divorce decree is invalid in Pennsylvania, the support order remains binding on the appellant.

Our Supreme Court has recently set forth the standards for determining the validity of a sister state's divorce decree: "It is well established that once [a sister state] has granted a divorce decree that decree is presumptively valid in this jurisdiction. *Esenwien v. Commonwealth ex rel. Esenwien,* 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608 (1945); *Williams v. North Carolina (II),* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Such a decree is 'a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded . . . ,' *Commonwealth ex rel. McVay v. McVay,* 383 Pa. 70, 73, 118 A.2d 144, 146 (1955), and bona fide domicile is the essential jurisdictional fact necessary to give any decree extraterritorial effect. See *Williams v. North Carolina (I),* 317 U.S. 287, 297–98, 63 S.Ct. 207, 212–13, 87 L.Ed. 279, 285–86 (1942); *Commonwealth ex rel. McVay v. McVay,* supra; *Commonwealth ex rel. Meth v. Meth,* 156 Pa.Super. 632, 41 A.2d 752 (1945). Additionally 'the burden rests heavily'

the holdings of the Superior Court in the *Stambaugh* case, supra, rather than upon the holdings of the Supreme Court of Pennsylvania in the same case".

upon the party attacking the decree to show that jurisdiction was in fact lacking. *Williams v. North Carolina (II)*, 325 U.S. 226, 233, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577, 1584 (1945). See *Commonwealth ex rel. Lorusso v. Lorusso*, 189 Pa.Super. 403, 150 A.2d 370 (1959); *Commonwealth v. Petrosky*, 168 Pa.Super. 232, 77 A.2d 647 (1951); *Commonwealth ex rel. Meth v. Meth*, 156 Pa.Super. 632, 41 A.2d 752 (1945)." *Stambaugh v. Stambaugh*, 458 Pa. 147, 151, 329 A.2d 483, 485 (1974).

Appellee argues, and the lower court held, that Pennsylvania should deny full faith and credit to the Nevada divorce because the appellant was never a bona fide domiciliary of Nevada. Domicile has been defined as involving both an intention to make a home in a given place permanently or indefinitely and physical presence at the given place. A change of residence, accompanied by an intent to reside in the new place indefinitely, constitutes the establishment of a new domicile. *Commonwealth ex rel. Lorusso v. Lorusso*, supra; *Commonwealth ex rel. Meth v. Meth*, supra. The jurisdiction of a state to issue a valid divorce decree is clearly dependent upon the domicile of one spouse. *Stambaugh v. Stambaugh*, supra; *Commonwealth ex rel. McVay v. McVay*, supra. Further, the full faith and credit clause requires us to presume that the appellant's domicile is bona fide. *Williams v. North Carolina (II)*, supra; *Commonwealth ex rel. Lorusso v. Lorusso*, supra. The issue in the instant case, therefore, is whether the appellee has overcome this presumption. In passing upon this issue, we note our standard of review: "The issue of domicile, however, is a mixed question of law and fact reviewable by an appellate court. In *Dorrance's Estate*, 309 Pa. 151, 156, 163 A. 303, 304 (1932), this Court held: 'The determination of . . . domicile . . . is a conclusion of law, based upon facts, most of which are undisputed. Furthermore . . . where a finding of fact is simply a deduction from other facts reported by the tribunal un-

der review, and the ultimate fact in question is purely the result of reasoning, we are competent to judge of its correctness and will draw our own conclusions from the facts as reported.' *Accord, Smith v. Smith,* 364 Pa. 1, 70 A.2d 630 (1950)." *Stambaugh v. Stambaugh,* supra, 458 Pa. at 151–52, 329 A.2d at 485.

■ ■ Appellant's physical presence in Nevada is not questioned. Thus, the sole remaining issue is whether the appellant intended to reside in Nevada indefinitely. In determining a person's intention, we must examine both what the person says his intent is and what his acts indicate his intent to be at the time in question. *Commonwealth ex rel. Lorusso v. Lorusso,* supra. In the instant case, the appellant stated that it was his intent to reside in Nevada indefinitely. This statement was made under oath and is entitled to some weight. We recognize, however, that it is a self-serving declaration and, therefore, must be supported by acts which are in accordance with that declaration.

■ The record in the instant case establishes the following: The parties were separated seven years prior to the appellant's departure to Nevada. Apparently, he was having trouble obtaining a Pennsylvania divorce and, therefore, decided to take advantage of both the Nevada divorce laws and his license to practice medicine in California. The fact that the appellant's motive for going to Nevada may have been to obtain a divorce is relevant only to the extent that it helps clarify his intention regarding his stay in Nevada. His motive for going to Nevada is immaterial if, in fact, he intended to stay there indefinitely. See, e. g., *Commonwealth ex rel. McVay v. McVay,* supra; *Commonwealth ex rel. Lorusso v. Lorusso,* supra. Before leaving Pennsylvania, the appellant severed all ties with Pennsylvania: he resigned from his staff appointment at Bryn Mawr Hospital, sold

all his household furnishings, and rented his house.[5] Upon arriving in Nevada, he acquired all the indicia of a bona fide domiciliary: a Nevada driver's license, car registration, and voter's registration. He also enrolled his son in Nevada schools, indicated to the California hospital that his employment would be permanent, and remarried in Nevada. Furthermore, the appellant remained in Nevada some 21 months. Finally, shortly after his return to Pennsylvania, he experienced marital difficulties with his second wife. Yet he did not file for divorce until the Pennsylvania residency requirement had been satisfied. Thus, the appellant apparently believed that he was a Nevada domiciliary and, therefore, was required to re-establish residency in Pennsylvania before maintaining a divorce action.

The appellee, on the other hand, points to the following facts which she contends indicate that the appellant's intent was not to remain in Nevada indefinitely. First, prior to his departure, the appellant told the appellee's sister that he would go to Nevada to secure a divorce if the appellee continued to refuse to grant him a divorce in Pennsylvania. As noted earlier, however, appellant's motive for going to Nevada is immaterial if, in fact, he intended to remain there indefinitely. Second, the appellant lived in rented, furnished homes in Nevada. The appellant explained, however, that the only available housing alternative was a condominium, which was more expensive than renting a furnished home. Third, the appellant's medical position in the California hospital was less prestigious than his position at Bryn Mawr Hospital. Appellee presented no evidence, however, to support this conclusion. Finally, the appellant returned to Pennsylvania within 21 months, regained possession of his home, and was reappointed to a staff position at Bryn Mawr

5. Appellant was unable to sell the house because to do so would require the appellee's signature on the deed. See *Commonwealth ex rel. Lorusso v. Lorusso,* supra.

Hospital. Thus, appellee argues, the appellant has assumed his former Pennsylvania status completely, thereby evidencing an intent never to leave permanently. Appellee does not point to any evidence, however, that the appellant made these arrangements prior to his departure from Pennsylvania. On the contrary, the lease on the appellant's home had not yet expired when the appellant returned to Pennsylvania and the appellant was obligated to "buy out" the lease on his home.

While there is some evidence supporting appellee's position, we cannot conclude that the appellee has met the burden which "rests heavily" upon her to demonstrate that jurisdiction was lacking. Once again, we note that "[i]ntention is a thought known only to the person who has it. With our limited ability to extract the thoughts of another against his will, we must rely upon what he says his thoughts are and what his acts indicate his thoughts to be." *Commonwealth ex rel. Lorusso v. Lorusso,* supra, 189 Pa.Super. at 410, 150 A.2d at 374. From the state of the record before us, we are unable to conclude that the appellant had no intention of remaining in Nevada indefinitely. Thus, the order denying full faith and credit to appellant's Nevada divorce must be reversed, and appellant's obligation of support terminated.

Order reversed.